LOUIS M'LANE, EXECUTOR OF ALLEN M'LANE, DECEASED, CLAIMANT OF A MOIETY OF THE FORFEITURE OF THE SHIP GOOD FRIENDS, APPELLANT v. THE UNITED STATES.

The ship Good Friends, and her cargo of British merchandise, owned by Stephen Girard a citizen of the United States, was seized by the collector of the Delaware district, on the 19th of April 1812, for a violation of the non-inter-course laws of the United States, then in force. The ship and cargo were condemned as forfeited, in the district and circuit court of the Delaware district. On the 29th July 1813, congress passed an "act for the relief of the owners of the Good Friends, &c.," and a remission of the forfeiture was granted by the secretary of the treasury, under the authority of that act, with the exception of a sum equal to the double duties imposed by an act of congress passed on the 1st of July 1812. The collector was entitled to one moiety of the whole amount reserved by the secretary of the treasury, as the condition of the remission.

Where a sentence of condemnation has been finally pronounced in a case of seizure, this court, as an incident to the possession of the principal cause, has a right to proceed to decree a distribution of the proceeds, according to the terms prescribed by law. And it is a familiar practice to institute proceedings for the purpose of such distribution, whenever a doubt occurs as to the rights of the parties, who are entitled to share in the distribution.

The duty of the collector in superintending the collection of the revenue, and of making seizures for supposed violations of law, is onerous and full of perplexity. If he seizes any goods, it is at his own peril; and he is condemnable in damages and costs, if it should turn out upon the final adjudication, that there was no probable cause for the seizure. As a just reward for his diligence, and a compensation for his risks; at once to stimulate his vigilance and secure his activity; the laws of the United States have awarded to him a large share of the proceeds of the forfeiture. But his right by the seizure is but inchoate; and although the forfeiture may have been justly incurred, yet the government has reserved to itself the right to release it, either in whole or in part, until the proceeds have been actually received for distribution; and in that event, and to that extent, it displaces the right of the collector. Such was the decision of this court in the case of the United States v. Morris, 10 Wheaton, 246.

But whatever is reserved to the government out of the forfeiture, is reserved as well for the seizing officer as for itself; and is distributable accordingly. The government has no authority, under its existing laws, to release the collector's share as such, and yet to retain to itself the other part of the forfeiture.

In point of law, no duties, as such, can legally accrue upon the importation of prohibited goods. They are not entitled to entry at the custom house, or to be bonded. They are, ipso facto, forfeited by the mere act of importation.

APPEAL from the decree of the circuit court of the United States for the district of Delaware.

The material facts of the case appear in the following agreed

[M'Lane v. The United States.]

statement made in the circuit court, and brought up to the supreme court of the United States, to wit:

"On motion of C. A. Rodney, on behalf of Colonel A. M'Lane, collector of the Delaware district, for a distribution of the forfeiture decreed by the court, of which the said A. M'Lane claims one full moiety of the whole exacted from, and paid by the claimant, the following statement of facts is agreed to, and submitted to the court by the counsel on both sides:

" The ship Good Friends, laden with the cargo above stated consisting of goods, wares, and merchandise, of British growth, produce or manufacture, was seized, as prohibited, by the said A. M'Lane, collector as aforesaid, within the district aforesaid, on the 19th of April 1812, for a violation of the acts of congress, in such case made and provided: the said ship and cargo were afterwards libelled, and prosecuted to condemnation, in the district court of the Delaware district; and the sentence of that court was afterwards affirmed on appeal by a decree of the circuit court, from which decree an appeal was not prosecuted.

" That, by virtue of an act of congress, entitled, " an act for the relief of the owners of the ships called the Good Friends, the Amazon, and the United States, and their cargoes, and also of Henry Bryce, passed the 29th July 1813, upon the petition of Stephen Girard, claimant of the cargo of the ship Good Friends as aforesaid, a remission of the forfeiture was granted by the secretary of the treasury, with the exception of a sum equal to the amount of the double duties imposed by an act of congress passed on the 1st of July 1812: that the said sum was afterwards paid by the said S. Girard, to C. J. Ingersoll, district attorney of the United States for the district of Pennsylvania.

" That it has been decided by the treasury department, that the said Allen M'Lane is entitled to one moiety of the additional duties imposed by the act of 1st July aforesaid, on goods not prohibited, and which is therefore undisputed, but not to a full moiety of the whole sum exacted from the said S. Girard, and paid as aforesaid; whereas, the said A. M'Lane, collector as aforesaid, insists that he is legally and justly entitled to one full moiety of the whole amount paid as aforesaid, considering

[M'Lane v. The United States.]

it all as forfeiture; inasmuch as the cargo of the ship Good Friends consisted entirely of goods prohibited, and not subject to any duty; and that whatsoever portion was not remitted is to be considered as forfeiture; and that, as the sum exacted is one and indivisible, he is entitled to a full moiety of it.

" It is further agreed, that a decree *pro forma* be entered on this motion against the said A. M'Lane, for the purpose of bringing this question before the supreme court of the United States for final decision; and that an appeal be entered, in due form, from such decree, and that this statement of facts, with the records, exhibits, depositions and documents herein referred to, be transmitted to the said supreme court for hearing, at the ensuing term."

The particular facts referred to in the statement, appeared at large on the record of the proceedings in the district and circuit courts. The following are abstracted from the record:

The seizure was made on the 19th of April 1812, at New Castle, in the state of Delaware. The libel was filed on the 5th May 1812. The goods were appraised and delivered to claimant upon bond, with sureties for the appraised value, the 9th May 1812. The decree of condemnation in the district court, was given the 17th April 1813, and, the same day, an appeal to the circuit court was entered.

This decree was affirmed in the circuit court on the 29th September 1818; subject to the operation of the act of congress of 29th July 1813, and the remission of February 1813, 1814.

On the same day an appeal was entered to the Supreme Court of the United States, which was not prosecuted.

In March 1812, Mr Girard presented a memorial to congress, praying for relief.

On the 29th July 1813, an act of congress was passed, of which the following is a copy, to wit:

" An act for the relief of the owners of the ships called the Good Friends, the Amazon, and the United States, and their cargoes; and also of Henry Bryce.

"Section 1. Be it enacted by the senate and house of representatives of the United States of America, in congress assembled, that the owners of the ships called the Good Friends, the Amazon and the United States, and of the cargoes on board

[M'Lane v. The United States.]

said vessels, which vessels arrived in the month of April 1812, in the district of Delaware, from Amelia Island, with cargoes that were shipped on board said vessels in the united kingdom of Great Britain and Ireland, shall be entitled to, and may avail themselves of all the benefits, privileges and provisions of. the act entitled, 'an act directing the secretary of the treasury to remit fines, forfeitures and penalties in certain cases,' passed on the 2d day of January last past, in like manner, and on the same conditions as though said vessels had departed from the kingdom aforesaid, between the 23d day of June and the 15th day of September, mentioned in said act, and had arrived within the United States after the 1st day of July last."

The district judge of the United States, for the district of Delaware, certified the following statement of facts to the secretary of the treasury of the United States, on the 25th November 1813.

"Having inquired into the facts stated in the annexed petition, after reasonable notice thereof had been given to the district attorney and the collector of Wilmington, I do find, and cause to be stated to the secretary of the treasury of the United States:

" 1. That Stephen Girard, the petitioner, is a citizen of the United States, as stated in his petition.

" 2. That the said petitioner is the owner of the ship Good Friends and her cargo, and that he was the owner at the time of the shipment of the cargo at London, and also at the time of the arrival of the ship and cargo in the district of Delaware.

" 3. That the said ship and cargo arrived in the said district of Delaware, before the declaration of war, to wit, in the month of April 1812, and were thereupon seized and prosecuted, as forfeited for a breach of the non-importation laws.

The following protest was presented by Allen M'Lane, Esq. November 25, 1813.

" On motion, on behalf of the collector of the Delaware district, in the case of the petition of S. Girard for the remission from forfeiture of his ship Good Friends and cargo, which had arrived in the Delaware district from London, via Amelia Island, and was thereupon by the said collector, acting from his own knowledge of the matter, seized and forfeited, and in pursuance to instructions from the secretary of the treasury,

bearing date the 6th of May, A. D. 1812, libelled in the district court, for the Delaware district, and afterwards condemned as forfeited, by the sentence of the said court, whereby a right to one moiety or half part of the appraised value of the said ship and cargo became vested in the said collector: it is suggested and alleged by the said collector, that the right and interest which thus vested in him by virtue of the said seizure, forfeiture and sentence of condemnation, in the said moiety of the said ship and her cargo, was absolute and indefeasible, so long as the said sentence of condemnation remained in force; so that by no act of congress, passed subsequently to the said sentence of condemnation, could such his right or interest be affected, impaired or divested: and it is therefore insisted on behalf of the said collector, *protesting* against the allowance of the prayer of the said petition, or the said petitioner obtaining the benefit thereof, that this court should not, by its certificate or act upon the said petition, impair or infringe the right of the said collector in the said moiety of the said ship and cargo; and to the end that this allegation and protest may appear, that a copy thereof may be annexed to the honourable district judge's certificate and act upon the said petition.

"And it is further suggested by the said collector, that the act of congress, under which the petition is presented, was not intended in its provisions to extend to any case in which a sentence of condemnation had been rendered, but only to the cases from Amelia Island, which were *sub judice*, and undecided at the time of passing it; and the case of the Good Friends having been regularly prosecuted to condemnation before the passing of the said act, it is thereupon ordered and directed by his honour the judge, that a copy of this suggestion be transmitted to the secretary of the treasury, with the certificate in this case granted by this court."

The remission by the secretary of the treasury on the 24th of February 1814, was in these terms:

"To all to whom these presents shall come, I, George Washington Campbell, secretary of the treasury of the United States, send greeting:

"Whereas a statement of facts bearing date the 25th day of November 1813, together with the petition of Stephen Girard, owner of the ship Good Friends, and cargo thereto annexed,

[M'Lane v. The United States.]

touching the forfeitures and penalties which, by reason of the importation of certain merchandise in the said ship Good Friends, have been incurred under a statute of the United States, entitled 'an act to interdict the commercial intercourse between the United States, and Great Britain and France and their dependencies, and for other purposes,' and a statute entitled 'an act concerning the commercial intercourse between the United States and Great Britain and France, and for other purposes,' and the statute supplementary to the last mentioned statute, has been transmitted to the secretary of the treasury, by the judge of the United States for the district of Delaware, pursuant to the statute of the United States, entitled 'an act to provide for mitigating or remitting the forfeitures, penalties or disabilities accruing in certain cases therein mentioned,' and pursuant to two other statutes of the United States, one of which is entitled, 'an act for the relief of the owners of the ships called the Good Friends, the Amazon, and the United States, and their cargoes, and also of Henry Bryce;' and the other, which is therein referred to, is entitled 'an act directing the secretary of the treasury to remit fines, forfeitures and penalties in certain cases,' as by said statement of facts and petition, remaining in the treasury department of the United States, may fully appear: and, whereas I, the said secretary of the treasury, have maturely considered the said statement of facts and petition; and, whereas, it has been proved to my satisfaction that the goods, wares and merchandise, by the importation whereof the forfeitures and penalties aforesaid have been incurred, were, at the time of their shipment and importation, bona fide owned by a citizen of the United States, and the said forfeitures and penalties were incurred, without wilful negligence or intention of fraud:

"Now, therefore, know ye, that I, the said secretary of the treasury, in pursuance of the directions of the said act entitled, 'an act for the relief of the owners of the ships called the Good Friends, the Amazon and the United States, and their cargoes, and also of Henry Bryce;' and by virtue of the power and authority vested in me, by the aforesaid several other acts, do hereby remit to the petitioner aforesaid, all the right, claim and demand of the United States, and of all others whomsoever, to the whole or any part of the fines, penalties and

Vol. VI.—3 B

forfeitures incurred as aforesaid, upon the costs and charges that have arisen, or may arise, being paid, and on payment of the duties, which would have been payable by law on the goods, wares and merchandise imported in the said ship Good Friends, if the same had been legally imported into the United States after the 1st day of July, one thousand eight hundred and twelve; and also, do hereby direct the prosecution or prosecutions, if any shall have been instituted for the recovery thereof, to cease and be determined, on payment of the costs, charges and duties as aforesaid."

This case was argued by Mr Jones and Mr Sergeant for the appellant: and by Mr Taney, attorney-general of the United States, for the appellees.

By Mr Sergeant, for the appellant, it was contended; that the decree of the circuit court ought to be reversed, and a decree rendered in favour of the appellant; because the amount directed by the remission to be paid to the United States was in fact and in law a portion of the thing forfeited, or of the proceeds thereof; and was so directed and ordered by virtue of the power derived from the forfeiture; and therefore, the appellant is entitled to a full moiety thereof.

Was not the late Allen M'Lane entitled, and are not his personal representatives entitled to one equal moiety of what was reserved by the government, out of the forfeiture of the cargo of the ship Good Friends?

The right to the moiety of what has been received, beyond the amount of the single duties, is admitted. That matter is disposed of, and finally decided.

The question, therefore, is, whether he is not entitled, also, to a moiety of the residue, or of that sum which is equal in amount to what are denominated the single duties. In other words, whether the sum reserved is divisible, so that one part of it is to be dealt with and considered as forfeiture, and the other part as not being forfeiture.

It is contended, and an endeavour will be made to maintain, that the whole is forfeiture, and to be dealt with and disposed of accordingly. That there is no ground for a distinction to the prejudice of the collector. That such distinction as has been made is entirely arbitrary (mitiori sensu) and unwarranted.

[M'Lane v. The United States.]

Before proceeding to refer to the several acts of congress upon this subject, it is necessary to state some dates.

The seizure was made by the collector, A. M'Lane, at New Castle, in the state of Delaware, the 19th April 1812. The libel was filed the 5th May 1812. The condemnation in the district court was upon the 17th April 1813. The act of congress for the relief of the owner of the Good Friends was passed on the 29th July 1813. The remission by the secretary of the treasury was granted upon the 24th February 1814. The decree of condemnation was affirmed in the circuit court the 29th September 1818. Mr M'Lane protested against the remission on the 25th March 1813.

The several acts of congress material to the case, are, first, the act of the 29th July 1813, which is set out in the case agreed, 4 Laws U. S. 581. This act refers for the *mode* and *measure* of relief to the act of 29th January 1813. That is found in 4 Laws U. S. 485. The difference between the cases provided for by the act of 29th January 1813 and the present case, is obvious. Those were cases of goods brought in after the duties were doubled; this case is one of goods brought in before that period.

The other acts are the act doubling the duties, passed on the 1st July 1812, 4 Laws U. S. 459. The act of 29th January 1813 refers to the act for mitigating and remitting penalties, of 3d March 1797, to be found in 2 Laws U. S. 585. The difference between the acts of 1813 and the general act of 1797, consists in several very important particulars. 1. The facts to be proved under the act of 1797, are not required to be proved under these acts. 2. By the acts of 1813, no discretion is given to the secretary of the treasury. 3. The terms of remission are prescribed by the law, and not left to the secretary, as by the act of 1797.

This act, 29th July 1813, is therefore neither more nor less than a legislative remission, applying, retrospectively, to the relief of forfeitures incurred *before* the passing of the act. This is a most material circumstance, to be borne in mind throughout the present case.

It was a relief in cases to which no existing power applied, upon terms which no existing law prescribed. It was an act of legislative grace and pardon, of a very peculiar character.

[M'Lane v. The United States.]

As between the United States and the claimants, such an exertion of power was well enough, and is not to be complained of. As respects third persons, whose rights and interests were already vested, and were to be affected, it is another question.

The acts under which the forfeiture in the case of the Good Friends accrued, and the acts under which the rights of Colonel M'Lane became vested, were the following:

The first was the act of 1st March 1809, 4 Laws U. S. 211, sect. 4, 5. The act of 28th June 1809, sect. 1, 2, 4, 4 Laws U. S. 237. The act of 1st May 1810, sect. 3, 4 Laws U. S. 305. The act of 2d March 1811, 4 Laws U. S. 339. Under these acts, all *importation* was prohibited. No goods could be entered, or become liable to duty. They were all subject to seizure and condemnation.

By these acts it will be seen, that penalties and forfeitures were to be imposed and distributed according to the provisions of the ninety-first section of the act of the 2d March 1799. That provision is in 3 Laws U. S. 136, sect. 91, page 223.

These are all the acts or parts of acts it is material now to refer to.

The question, then, is upon the true interpretation and meaning of the act of the 1st July 1812, keeping in view all the acts and parts of acts already referred to? It is not necessary now to inquire into the general power of *congress* upon the subject of forfeitures incurred. So far as respects the property relinquished by the act, the collector now acquiesces; although he protested at the time, and considered himself very much injured.

But as to that part which was not relinquished, but was retained by the United States, the question is upon the interpretation of the act, involving, quoad hoc, the power of congress. Could congress, not only relinquish a part of the forfeiture incurred, to the prejudice of the collector's rights; but could they also, of the portions reserved, give to the United States a larger portion than to the collector? It is considered clear that they could not.

By the seizure, the collector had a right in the property seized, to the extent of one half, to be consummated by condemnation. Jones v. Shore, 1 Wheat. 462. Van Ness v.

Buel, 4 Wheat. 74. United States v. Morris, 10 Wheat. 246, 292, 293.

2. There existed no law which conferred upon the secretary of the treasury, or upon any one else, a power of remission, so as to impair that right, or to prevent or diminish its enjoyment by the collector. It may be, that it was within the scope of the president's power of pardon, though that is a questionable point. It has once been before this court (United States v. Lancaster), but was not decided. It does not arise here, for the pardoning power has not been interposed.

3. Congress have no such power, that is to operate by legislation upon pre-existing vested rights.

4. Wherever congress have legislated upon the subject of remission, it has always been with a saving of pre-existing rights. And such they have always considered to be the rights acquired by seizure.

Of this there is the plainest evidence in the act of 3d March 1797, 2 Laws U. S. 585, sect. 3. Cited, United States v. Morris, 10 Wheat. 246. There is, also, plain evidence of this in the act of 28th June 1809, 4 Laws U. S. 237, sect. 2.

There is very powerful evidence of this also in the fact, that every law creating penalties and forfeitures, gives a special power of remission, *prospectively*. So that it may be said to be the sense of the legislature, as it is of the judiciary, that the right is vested by the seizure and prosecution, subject only to such qualified power of remission as then existed by law. Colonel M'Lane, the collector, might well contend, as he did, that there was no power by subsequent legislation to touch his share of the forfeiture. He is fully sustained in it; for such appears to be the uniform understanding, without exception.

5. Under the general law, the secretary of the treasury has clearly no power to remit or relinquish the collector's part, eo nomine. Margaretta, 2 Gall. 515.

6. No duties were by law payable upon these goods. No duties could accrue upon them. Duties by law accrue, and are payable only upon goods imported, according to law. No duties are or can be payable upon goods brought in contrary to law, and in violation of law. They cannot be, for the most obvious and conclusive reasons. Duties ac-

crue, not upon arrival in the United States, but upon arrival at the *port of entry*. United States v. Vowell, 5 Cranch, 368. Arnold v. United States, 9 Cranch, 104. S. C. 1 Gall. 348.

But forfeiture to the United States also accrues, at latest, immediately upon arrival in the United States, and before arriving at the port of entry. No matter when the seizure takes place, it has relation back to the time of offence committed, and overreaches a bona fide sale. This has been decided upon the very acts now in question. United States v. 1960 Bags of Coffee, 8 Cranch, 398. United States v. The Mars, 8 Cranch, 417. So, in Gelston v. Hoyt, 3 Wheat. 146, 311. " A forfeiture attaches in rem at the moment the offence is committed, and the property is *instantly* divested." If it be instantly divested as to the former owner, it is, of course, instantly *vested* in the United States; but no duty is payable upon goods belonging to the United States.

The goods in question, therefore, were never liable to *duties*. No duties were by law payable upon them, and no duties could be charged upon them. They could not be entered or bonded. No duties accrued upon them. For, 1. They were not legally *imported*. 2. They were forfeited to the *United States* before arrival in port, and before duties could accrue. 3. That forfeiture was *consummated* by seizure, and *conclusively* proved by condemnation. It overreached every thing.

7. It need only be added for the entire understanding of the question, that in this forfeiture, accrued and perfected before duties could accrue, the collector had by law a vested right to a moiety. It was his by *contract*, as much as his salary; as a part of the emoluments of his office; or as a reward for his special exertions, exposure and sacrifice.

*In these cases it was very well earned;* it cost him great labour, and exposed him to a contest with powerful adversaries. He stood alone against a host. No doubt it was subject to *existing* laws. No doubt it was subject to *existing* rights; but it was not subject to *new* or *subsequent* laws; nor to newly created rights. One-half of whatever might be recovered by the United States, belonged by law and by contract to the collector. The collector's part, as such, cannot be remitted. Margaretta, 2 Gall. 522.

> [M Lane v. The United States.]

It is not intended, however, to examine the general power of congress, nor to ask this court to perform the invidious duty of limiting an exercise of power by congress. Let it be admitted for the present purpose, that congress can by a legislative remission, release the forfeiture, and disappoint the just expectations of the collector, as an incident. Can congress do still more? can congres reserve to the United States, a portion of the forfeiture, giving up entirely that of the collector?

The proposition is too extravagant to be admitted for a moment. The *intention* to do so, is too manifestly unjust to be imputed. Respect for congress forbids the imputation.

Mark what the effect would be. The policy of these acts of grace towards importers, is not to be questioned now. But this is clear: it gave to the offenders the full benefit of the non-importation laws; at the expense of the rest of the community. They had in effect the fruits of a monopoly. The United States, too, are to reap a harvest. The collector alone, who has toiled and suffered in the service, is to go unpaid and unrewarded. This ought not to be. This cannot be.

The treasury, it is admitted, has been properly cautious in avoiding the responsibility of a decision of this question. A court of justice experiences no *such* difficulty, and practises no *such* caut on. It pronounces its judgments according to the right.  ̄ pon the ground of right, it is asked, whence is any such power derived, as that asserted for the United States?

This, then, was the state of things when the act of July 1813 passed. No *duties* had accrued, or were payable. The goods were forfeited, in fact and in law. The forfeiture was fixed by the condemnation. The right to one half was by law vested in the collector. An application was made to congress for relief. Congress gave it by the act of July 1813. What is the just and legal interpretation of that act?

It is not necessary to remind the court, that such an interpretation is always to be given, if possible, as is consistent with justice and the rightful power of the legislature. Nothing but express words can extort a different construction, even from an act of a parliament said to be omnipotent: still less of an act of a constitutional congress, whose power is limited by written law, and by a cautious respect for the rights of the citizen.

What, then, is the *true* construction of the act in question?

1. There are no express words, it must be admitted, requiring an unjust construction of the act, to the injury of the collector. 2. There is nothing which shows this to have been the intention. But the contrary: for, 3. The reservation is *one* and entire, without discrimination or distinction. The whole reservation is of one character. It *all* derives its efficacy from the same source; namely, forfeiture: giving up a part, and retaining the rest by right of forfeiture. 4. The true character of the act is that of relinquishment or remission of a part. The title of the act, and all the provisions demonstrate this.

It is proper here to notice an incident in the case, which may perhaps *appear*, at first view, to have some influence upon it. It seems that the goods were given up on bonds for the appraised value the 9th May 1812. The only authority for such a delivery is that contained in the eighty-ninth section of the act of 1799, 3 Laws U. S. 221.

On this it is to be observed; that it is no part of the case stated. Why not, is obvious: for it was unauthorised by law. The non-intercourse acts did not adopt this provision in the collection law, expressly or impliedly. The reason of it was that it did not apply. Goods were not importable under the law. The treasury remonstrated against it.

2. If it had applied, it would not have altered the question of forfeiture, nor the question of distribution. They do not depend upon the *mode* of proceeding. It is wholly disregarded by the act of 29th July 1813. That act takes up the matter upon the original simple ground of forfeiture, without regard to this proceeding. It fixes the forfeiture to be insisted upon in gross. It does not say "in addition" to duties. It in fact, and in the plainest possible way, disregards that incident, and takes up the matter entirely de novo. If any thing had previously been paid, it could only be a credit under this act, whether paid as duties or otherwise. So the treasury construed it.

What, then, was the *intention* of the act? It was a just and honest intention. To do justice to the country, and at the same time to do justice to the confessedly meritorious officer. To give to the United States an amount equal to the *duties*

[M'Lane v. The United States.]

which would have accrued if the importation had been legal; and to the collector, a like amount. The duties that would have accrued were the single duties. The goods arrived before the duties were doubled.

What was the *mode* adopted to accomplish this purpose? *To fix a sum equal to twice the amount of duties.* This precisely accomplished the purpose. The mention of "duties" was merely a *reference* to fix the amount according to this view.

It was not to charge *duties*, but only to ascertain a *sum*. So it has been understood by the treasury. If any part was " duty," the whole was duty. But the treasury has agreed that one moiety was forfeiture, and that of *that* moiety the collector is entitled to one half. This concession (too plain to be withheld) is an admission which inevitably goes to the whole: for, as the reservation is one and entire, if any part was forfeiture, the whole was forfeiture, and none was duty. Upon any other construction, the United States would get three-fourths, and the collector only one-fourth. He would be stripped of his due proportion, even of the remnant that was retained of that entire and large forfeiture of the whole cargo, of which a moiety so clearly belonged to him.

On these grounds it is submitted that the title of the appellant is plain. The partnership between the United States and the collector, established by law, continues throughout. It is not to be supposed that when the United States, by their own act, diminished the joint stock, without the consent and against the remonstrances of the collector, to his great prejudice; they intended also by their own mere power, to do him still further wrong by changing the proportions of interest in what remained, and appropriating to themselves (at his expense) the largest share of what remained. Less than " equality," cannot here be " equity."

Mr Taney, attorney-general, contra.

The principles which regulate the case now before the court have been decided in the case of the United States v. Morris, 10 Wheat. 289. The settlement by the treasury with the owner of the Good Friends and her cargo, settles the case. Its being a remission by an act of congress, does not change the

principles by which the case is governed. The remission does not derive its authority from the act of congress of 1813; that act was intended only to justify what might perhaps be doubtful. The power to remit existed prior to that act.

The ship Good Friends arrived in the Delaware in April 1812; and on the 1st of July of that year the act imposing double duties was passed. The double duties were imposed as a penalty; and this principle was assumed at the treasury and acted upon in the case: but as to the single duties, they would have been due if the vessel had arrived after the 1st of July; and as to these duties, the importation was treated as if it had been legal. The settlement in the case of this ship was the same with those which were made in similar cases.

An examination of the act of the 29th July 1813, will show that it was not an act conferring new powers, but it gave relief on the same terms as the act referred to; and we must look to the law of July 1, 1812, to see what were the benefits intended to be conferred by the act of July 29, 1813, for the relief of the owners of the ships Good Friends and Amazon, &c.

The remissions under the act of January 2, 1813, were made on payment of the duties; and the act of July in favour of the collector was intended to put this case on the same footing; except that an additional penalty is imposed by the act, and the rights of parties must be determined by the act of January 2, 1813. In all these cases they were forfeitures, and within the power of the secretary of the treasury to remit; and the act was passed on account of the magnitude of the case. Cited the message of the president of the United States to congress of 4th March 1812; also the report of Mr Gallatin, secretary of the treasury of 18th March 1812.

The importations against the non-intercourse laws at that period are stated in the report of Mr Gallatin, to amount to about eighteen millions of dollars; and they would have given duties to the amount of five millions. Mr Gallatin expressly states, that all these cases came under the remitting power of the secretary of the treasury, but asked the interference of congress. There was a report of a committee of congress sanctioning the power of the secretary, but this was not adopted; and the law of January 2, 1823, originated from that circumstance.

In all these cases seizures had been made, and the law put the importations on the same footing as if they had been legal, and the claims of the seizing officers were not regarded. The whole course of proceedings at the treasury has been according to this construction. To change this construction now, would unsettle millions; and the government would be bound to refund one half of what was received as duties.

The case of the United States v. Morris, 10 Wheaton, 289, was under the same non-intercourse law as that to the penalties of which the Good Friends was subjected. The remission of the secretary of the treasury in that case reserved five hundred dollars, to be distributed among certain officers. The seizure gives no absolute right to the seizing officer; but all is subject to the power of the secretary of the treasury, to dispense with the forfeiture on equitable principles. Upon a full examination of the questions in this case, these positions may be sustained.

1. The seizure of the Good Friends was for the same cause with the seizures mentioned in the act of January 2, 1813. 2. The rights acquired by the seizing officer were of the same nature and description with those acquired by the collector, upon the seizures mentioned in the act of January 2, 1813. 3. The Good Friends, as well as the other vessels, were seized for a violation of the non-intercourse laws. 4. The seizures were made subject to the power of remission given in the 18th section of the non-intercourse law: and the rights of the seizing officer were inchoate and conditional, and might be remitted at any time before the collection of the money. 5. The acts of January 2, 1813, and July 29, 1813, did not give the power of remission. It directed the power to be exercised in certain cases. 6. It has been the settled practice of the government to receive for itself, exclusively, the amount of duties due upon a lawful importation, and to give no part of it to the officer.

If in this case the appellant is entitled to a share of the duties due on a lawful importation, the five millions received upon the remissions under the act of January 2, 1813, must be divided, and the one half refunded to the seizing officer. The settled practice of the government would not now be disturbed by the court, unless the case was a clear one under the

law. 7. The court have sanctioned the interpretation of the executive officers, and decided this case in effect in the case of the United States v. Morris, 1 Payne, 209; 10 Wheat. 289, 290, 291, 292, 296.

The remission is not in the nature of a pardon, but of a relief in equity—a restoration to his legal rights as a lawful importer. The collector seizes subject to such equity; and if the secretary decides the equity against the United States, the collector is entitled to nothing.

The form in which it has been found necessary to bring forward this question shows that the collector has no legal vested right. Who could call for the money to be brought into court? The United States never directed satisfaction to be entered. They refuse to prosecute further. How can the collector proceed? Who is to ask that the money be brought into court? Who is to be ordered to bring it in?

8. There can be no reason for regarding this portion as forfeiture, under the true meaning of the act of congress. The question is, whether the legal duties are a part of this forfeiture contemplated by the act of March 2, 1799, chap. 128, sect. 89. 91; 3 vol. 221, 223.

The right of the collector is founded on the act of March 1, 1809, 4 vol. 211, sect. 18. Did congress mean by this language, where the forfeiture was remitted, to give to the collector the one half? 1. Where they authorised the forfeiture to be remitted, they certainly intended that the legal duties should be paid. 2. They contemplated a case of unlawful importation—a breach of the non-intercourse—for the penalty is inflicted, and the power of remission given in such cases. 3. Where they directed the distribution of the penalty, did they mean the legal dues upon a lawful importation?

If this be the interpretation, the relief must always be imperfect; for the United States, in order to protect themselves, must exact from the merchant more than the legal duties. The innocent must always suffer, or the United States must lose a part of its revenue, and divide the duties with the collector.

Those who imported goods from England, ithout a knowledge of the declaration of war, were free from all blame. They ought not to suffer. It is said they made large profits.

Is the public to lose? The seizure, in that case, is a positive injury. If there was no seizure, the goods would be entered, and the public receive the duties without abatement.

The government divides the forfeiture; it divides whatever is gained by the vigilance of the officer. This is the compensation for his responsibility—for the enemies he makes—the friends he disobliges.

Such was the situation of the collector in the case before the court, and he received as his reward, twenty-seven thousand dollars.

It is said that this release was by virtue of the law passed after this seizure, and not before; and that different terms are required, and therefore the power was derived from the law of 1813. To this it is answered, that the terms are superadded by the legislature, and the collector therefore had no right to complain. See act of 1797, 2d vol. 585. Act of January 2d, 1813, 4th vol. 485.

The legislature left the power as it stood, but the officer who might remit, refused to do it unless the additional circumstances were proved. The legislature refused to admit it to be done without them; and the officer refused to act on his own responsibility without them. Yet, when it took place, it was by virtue of the power under the act of 1797.

It is objected, that the United States have released the portion of the collector; but to this it is answered, that they have released no more for him than for themselves. There was no contract. The collector was the agent of the government.

But supposing there was a contract. It was no more than that the government would share with its agent whatever it received as penalty, and the same amount must be left to the government. But such supposed contract would extend to the whole cargo, if there was any right vested in the collector by the seizure.

Mr Jones, in reply, contended, that the claims of the collector in the case before the court, did not rest upon any general law; nor were they to be arranged under any class of cases. They are founded in a specific case, provided for in a particular law of the United States; and in which law congress had not undertaken to judge of the merits of the claims. The ob-

jection that this court cannot enforce these claims, is unexpected; since the United States have voluntarily submitted the case to this court.

It does not appear where the money claimed by the appellant is; it may be under the control of the court. It was paid to the district attorney of the United States, it is true, as the agent of the United States; and it may perhaps be presumed to have been paid into the treasury. But the question before the court is as to the right of distribution, not as to the power of enforcing it. The third section of the act of 1797, saves the rights of the collector and of the seizing officer in all cases of seizure before the act, and gives the court a right to judge of the distribution; and the agreed case, now before the court, implies that the money shall be deemed in court.

It is denied that the case of the United States v. Morris decides this case. There, the law for remission existed at the time of the forfeiture, and there was no question of distribution; but the only question in that case was, whether the execution could be enforced after the condition of the remission had been complied with: and that case was under the act of 1797, when the discretion of the secretary of the treasury was uncontrolled.

It is not admitted that the usage of the treasury should have any influence in the case before the court. The right of the appellant is to be decided by the acts of congress; and the court will construe these acts without the aid of the practice of the government.

There was no discretion as to the payment of the duties on the cargo of the ship under the act of 1799; it was made absolute and indispensable that the duties should be paid; and they were demanded, as a precedent condition to bonding the goods. Those duties were not to be deducted if there should have been ultimately a forfeiture of the goods bonded. But the law of 1813 made no provision about delivering goods; and the whole sum must be considered as paid as the price of redemption, and of course all that was paid was penalty.

The act of 1799 goes on the ground of an offence having been committed, but mitigated by circumstances; and the secretary of the treasury has power to remit on such terms as he thinks proper: and the act of 1813 goes on the same prin-

ciple, but no discretion is left to the secretary, on condition of making certain payments.

The secretary had no power under the act of 1797 to remit this property. The law of the 1st July was stronger than that of January 1812; and under that law, all that the secretary had to do, was to inquire whether Mr Girard, the owner of the Good Friends and cargo, was an American citizen.

It is denied that there was any distinction between legal and extra duties. The whole amount which was paid by the owner of the ship and cargo was paid as an entire sum; and the reference to duties was made only to ascertain the amount to be paid, as the condition of redeeming the goods. The law authorising this remission did not mean, by a retrospective operation, to make lawful that which was illegal. No forms of entry at the custom house were gone through, nor was any thing done as is required where duties on importation are imposed or collected.

The equity of the act of January 1813 was in favour of merchants who had ordered goods, without having had notice of the declaration of war in sufficient time to revoke the order. The case of the Good Friends was not of that kind; but it rested on other circumstances, and the authorising the remission was induced by other considerations. This is shown by the petition of Mr Girard, to which the court is referred.

It is submitted that the law of July 1st, 1813 was nothing more than a remission of the forfeiture, and did not put the case on the ground of a lawful importation. In the cases which were released by the act of January 1813, there was a clear and unqualified exemption from forfeiture or penalty, on payment of duties. This was the fact in the case of the Good Friends.

Mr Justice STORY delivered the opinion of the Court.

This case comes before the court upon an application made by Allen M'Lane, collector of the district of Delaware, to the circuit court of that district, for a decree of distribution of the forfeiture accruing from the seizure and condemnation of the ship Good Friends and cargo, one moiety whereof is claimed by the said collector, as seizing officer; there having been a remission of the forfeiture by the secretary of the treasury, under the

authority of the act of congress of the 29th of July 1813, ch. 33. Upon the conditions required by that act the only controversy existing in the cause is between the United States and the collector, in respect to his distributive share. The United States and the collector agreed upon a special statement of the facts; upon which it was further agreed that a decree, pro forma, should be entered by the circuit court against the collector, for the purpose of a final decision in the supreme court; and by an appeal from the pro forma decree so rendered, the cause now stands before this court.

Upon the argument at the bar, some objection was suggested, though not strenuously urged, against the jurisdiction of the circuit court to entertain the cause under the peculiar circumstances. But this objection appears to us not well founded. Where a sentence of condemnation has been finally pronounced in a case of seizure, the court, as an incident to the possession of the principal cause, has a right to proceed to decree a distribution of the proceeds, according to the terms prescribed by law. And it is a familiar practice to institute proceedings of this nature, wherever a doubt occurs as to the rights of the parties who are entitled to share in the distribution. There is nothing in the circumstances of the present case to displace this jurisdiction. And it now appears, that the proceeds of which the distribution is now claimed have been, by an express agreement between the United States and the collector, put in a situation to be forthcoming to meet the exigency of the decree which may be rendered upon the statement of facts.

The act of congress of the 29th of July 1813, enacts "that the owners of the ships called the Good Friends, the Amazon and the United States, and of the cargoes on board said vessels, which arrived in the month of April 1812, in the district of Delaware, from Amelia Island, with cargoes that were shipped on board said vessels in the united kingdom of Great Britain and Ireland, shall be entitled to, and may avail themselves of all the benefits, privileges and provisions of the act entitled "an act, directing the secretary of the treasury to remit fines, forfeitures and penalties in certain cases, passed on the 2d day of January last past, in like manner and on the same conditions as though said vessels had departed from the kingdom aforesaid between the 23d day of June and the 15th day

of September mentioned in said act, and had arrived within the United States *after the first day of July last*."

The act of the 2d of January 1813, chap. 149 [chap. 7], enacts that in all cases where goods, wares and merchandise, owned by a citizen or citizens of the United States, have been imported into the United States from the united kingdom of Great Britain and Ireland, which goods, &c. were shipped on board vessels which departed therefrom between the 23d day of June last and the 15th of September last, and the person or persons interested in such goods, &c. or concerned in the importation thereof, have thereby incurred any fine, penalty, or forfeiture under an act, &c. &c. (reciting the titles of the non-intercourse acts of 1st of March 1809, and of 1st of May 1810, and of 2d of March 1811), on such person or persons petitioning for relief to any judge or court proper to hear the same, in pursuance of the provision of the act entitled "an act to provide for mitigating, or remitting the fines, penalties and forfeitures in certain cases therein mentioned," and on the facts being shown, on inquiry had by said judge or court, &c.; in all such cases, wherein it shall be proved to his satisfaction, that said goods, &c. at the time of their shipment were bona fide owned by a citizen or citizens of the United States, and shipped, and did depart from some port or place in the United Kingdom of Great Britain and Ireland, owned as aforesaid, between the 23d day of June last and the 15th day of September last, the secretary of the treasury is hereby directed to remit all fines, penalties and forfeitures that may have been incurred under the said act, in consequence of such shipment, importation or importations upon the costs and charges, which have arisen, or may arise, being paid, and *on payment of the duties which would have been payable by law on such goods, &c., if legally imported, &c. &c.*"

The result of both of these acts taken together, as applicable to the case of the Good Friends, is, that the secretary of the treasury was directed to remit the forfeiture, upon the payment of costs and charges, and the duties upon the cargo, which would have been payable upon the same goods, if legally imported, after the 1st of July 1812, that is to say, upon payment of the double duties imposed by the act of the 1st of July 1812, ch. 112. Without question, these acts of congress were

directory and mandatory to the secretary; and in his remission, which forms a part of the case, he purports to act, and has in fact acted in obedience to their requirements.

It is wholly unnecessary to inquire whether the secretary would have had authority to remit the forfeiture in this case, under the remission act of the 3d of March 1797, ch. 67; because, in the first place, the terms, upon which the remission is to be granted by that act, essentially differ from those pre- scribed by these acts: and because, in the next place, the secretary purports to have acted in obedience to the latter.

The question then arises, in what light the reservation and payment of the double duties, as conditions upon which the remission is granted, are to be considered? Are the double duties to be deemed a mere payment of lawful duties; or are they to be deemed a part of the forfeiture reserved out of the proceeds of the cargo? If the latter be the true construction, then the collector is entitled to a moiety: if the former, he is barred of all claim.

The duty of the collector in superintending the collection of the revenue, and in making seizures for supposed violations of law, is onerous, and full of perplexity. If he seizes any goods, it is at his own peril; and he is condemnable in damages and costs, if it shall turn out, upon the final adjudication, that there was no probable cause for the seizure. As a just reward for his diligence, and a compensation for his risks; at once to stimulate his vigilance and secure his activity; the laws of the United States have awarded to him a large share of the proceeds of the forfeiture. But his right by the seizure is but inchoate: and although the forfeiture may have been justly incurred, yet the government has reserved to itself the right to release it either in whole or in part, until the proceeds have been actually received for distribution; and in that event, and to that extent, it displaces the right of the collector. Such was the decision of this court in the case of the United States v. Morris, 10 Wheat. Rep. 246. But whatever is reserved by the government out of the forfeiture, is reserved, as well for the seizing officer, as for itself; and is distributable accordingly. The government has no authority, under the existing laws, to release the collector's share as such; and yet to retain to itself the other part of the forfeiture.

In the present case, it is perfectly clear that the seizure of the Good Friends and her cargo was justifiable, and that they were forfeited for a violation of the non-intercourse acts.   This is established, not only by the final decree of condemnation, but by the very terms of the remission granted by the secre-. tary of the treasury.   In point of law, no duties, as such, can legally accrue upon the importation of prohibited goods. They are not entitled to entry at the custom house, or to be bonded.

They are, ipso facto, forfeited by the mere act of importation.   The Good Friends, then, having arrived in April 1812, long before the double duties were laid, and her cargo being prohibited from importation; it is impossible, in a legal sense, to sustain the argument, that the importation could be deemed innocent, and the government could be entitled to duties, as upon a lawful importation.   It was entitled to the whole property, by way of forfeiture; and to nothing by way of duties. When, therefore, congress authorised the remission upon the payment of double duties, the latter was imposed as a condition of restitution upon the offending party.   In the language of the act of the 2d of January 1813, the remission was to be " on payment of the duties, which would have been payable by law on such goods, &c., if legally imported;" not upon payment of the duties which had lawfully accrued upon the same goods. The act presupposes that no duties had accrued, or could accrue by operation of law upon the goods; and the act of the 29th of July 1813 expressly treats it as a condition.   Indeed, it is impossible that double duties could have lawfully accrued upon the importation of the cargo of the Good Friends, in April 1812, when the double duties were not imposed until the passage of the act of the 1st of July of the same year.

If the government had reserved a gross sum, equivalent to the double duties, out of the forfeiture, as a condition of the remission, there could be no doubt that the collector would have been entitled to his moiety of the sum so reserved.   Can it make any difference in point of law, that the reservation is made by a reference to double duties, as a mode of ascertaining that sum?   It has not been pretended that the act of the 29th of July 1813 could divest the rights of the collector, antecedently vested in him by the existing laws.   And if such a

doctrine could be maintained at all, it would still be necessary to establish that there was an unequivocal intention on the part of the government to remit his share, and to retain its own share of the forfeiture. Such an extraordinary exercise of power, if it could be even maintained. where it is subversive of existing rights, ought to be evidenced by terms susceptible of no doubt. We are of opinion that the present act neither justifies nor requires any such construction. The double duties are referred to as a mere mode of ascertaining the amount intended to be reserved out of the forfeiture; and not as a declaration of intention on the part of the government, that they were to be received as legal duties due upon a legal importation.

But a distinction has been taken at the argument on behalf of the United States, and an apportionment or division of the duties has been insisted on. It is said, that so much of the duties demanded as were equal to the single duties payable by law on imported goods in April 1812, ought to be considered as received in that character by the government; since this case has been treated by the government as an innocent importation. But as to the additional duties imposed by the act of 1st of July 1812, they may be considered as a reservation of forfeiture. And it is added, that the government has itself acted upon this distinction in this very case; for it has allowed the collector his moiety of the latter, and denied it in respect to the former.

The true answer to be given to this argument is, that the act itself contemplates no such apportionment or division of the duties. The duties are reserved as a whole, and not in moieties. And it could not well be otherwise; for, as has been already shown, no duties at all were legally payable on the goods. They were in fact, and were treated by the government as prohibited goods. And when the government imposed the double duties as a condition, they were imposed as a sum which would have accrued upon a legal importation after the 1st day of July 1812. The very circumstance, that the government itself has treated any part of the reservation as forfeiture, and as distributable accordingly, is conclusive to show that the whole is incapable of being treated as duties. The distinction contended for, then, not

being found in the act itself, and part of it being confessedly received in the character of a forfeiture; we think the whole must be treated as received as a reservation by way of forfeiture. Our opinion is grounded upon the fact, that the act refers to the double duties as a mere mode of ascertaining the amount; and that it is undistinguishable from the case of a reservation of a gross sum.

Upon the whole, the decree of the circuit court refusing the distribution is to be reversed, and the cause remanded to that court with directions to decree to the legal representatives of Allen M'Lane, the collector, one moiety of the double duties, deducting that portion which has been already received by him.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Delaware, and was argued by counsel; on consideration whereof, this Court is of opinion, that there is error in the decree of the circuit court, whereby it was ordered that the said Allen M'Lane take nothing by his motion for a decree of distribution of the forfeiture decreed by the circuit court in the proceedings in this cause, mentioned upon the statement of facts in the same proceedings mentioned; and for this error it is ordered, adjudged and decreed, that the decree of the said circuit court upon the motion aforesaid, be and hereby is reversed and annulled. And this court, proceeding to render such decree as the said circuit court ought to have passed, do hereby order, adjudge and decree upon the said motion, and statement of facts, that the said Allen M'Lane as collector, as herein mentioned, was in his lifetime entitled, and that his legal representative is now entitled to receive as his distributive share of the forfeiture aforesaid one full moiety of the whole sum which has been paid by Stephen Girard according to the act of congress, and the remission by the secretary of the treasury, as in the same statement of facts mentioned. And the said Allen M'Lane being now dead, it is further ordered, adjudged and decreed, that the same full moiety be paid over to his legal representative, now appearing and made a party to these proceedings in this Court, viz. Louis M'Lane, the

executor of the last will and testament of the said Allen
M'Lane, deceased, as his distributive share accordingly; de-
ducting, however, therefrom, the moiety of the said moiety,
which has been decided by the treasury department to belong
to the said Allen M'Lane; if the same has been received by
the said Allen M'Lane, or by his legal representative.