## JO꞉ S ET AL. *v.* SHORE'S EXECUTOR ET AL.

## THE UNITED STATES *v.* JONES ET AL.

A bond was given to T. S., the collector of the district of Petersburg, under the 2d section of the embargo act of the 22d December, 1807, and a suit was afterwards brought by him on the same bond in the district court, and pending the proceedings, to wit, on the 30th of October, 1811, J. S., the collector, died; and judgment was recovered in favour of the United States on the 30th of November, 1811. On the 26th of the same November, J. J. was appointed collector of the same district, and entered on the duties of his office on the 14th of December, 1811; until which time T. S., who was deputy collector under J. S. at his decease, continued as such to discharge the duties of the office. The judgment of the district court was subsequently affirmed by the circuit court. When the bond was taken A. T. was surveyor of the district, and continued in that office until his death, which was after the commencement of the suit on the bond and before judgment thereon, and was succeeded by J. H. P. who was appointed on the 30th of March, 1811, and entered on the duties of his office on the 16th of the same

month. It was held, that the personal representatives of the deceased collector and surveyor, and not their successors in office, were entitled to that portion of the penalty which is, by law, to be distributed among the revenue officers of the district where it was incurred. There being no naval officer in the district, the division was adjudged to be made in equal proportions between the collector and surveyor.

THE material facts of these cases are as follows: On the 23d of November, 1808, a bond was executed at the custom-house of Petersburg, in Virginia, to the United States, by Thomas Pearse, master of the ship Sally, of Philadelphia, and Robert M'Adam, Daniel Filton, and George Pegram, jun., in the penal sum of 46,300 dollars, upon condition that if the cargo of said vessel, consisting of 830 hogsheads of tobacco, intended to be transported in said vessel from the port of Petersburg to the port of Boston, in Massachusetts, should be relanded in the United States, the danger of the seas excepted, then the obligation to be void, otherwise to remain in full force. The bond was, in fact, given to John Shore, the collector of the district of Petersburg, in pursuance of the second section of the embargo act of the 22d December, 1807, ch. 5. A suit was afterwards brought by the said collector on the same bond in the district court for the district of Virginia, and pending the proceedings in said court, to wit, on or about the 30th of October, 1811, John Shore, the collector, died; and judgment was finally recovered on the same bond, in favour of the United States, on the 30th of November. 1811. On the 26th of the same November, John Jones was duly appointed and commissioned by the president as collector of the

same district, and he qualified as such, and took upon himself the discharge of the duties of the office on the 14th of December, 1811; until which time, Thomas Shore, who was deputy collector under John Shore at the time of his decease, continued, as such deputy collector, to discharge the duties of the office. Mr. Pegram sued out a writ of error from the said judgment, to the circuit court for the district of Virginia, and Mr. Pegram having died pending the proceedings, the suit was revived by his administrator, and the judgment of the district court was, at May term, 1814, affirmed by the circuit court. At the time when the bond was taken by the collector, Andrew Torborn was the surveyor of said district for the port of City Point, and continued in that office until his death, which happened after the commencement of the suit on said bond, and before the rendition of judgment thereon, and was succeeded in his office by John H. Peterson, who was appointed and commissioned on the 3d of March, 1811, and qualified and entered upon the discharge of the duties of that office on the 16th of the same month. At the May term of the circuit court, 1814, the whole debt and costs recovered by the judgment, were paid into court by the administrator of Mr. Pegram. Cross petitions were thereupon filed by the district attorney in behalf of the United States, praying the whole sum to be paid to him, or deposited in the bank of Virginia, to the credit of the treasurer of the United States, by the present collector and surveyor of the district of Petersburg, and by the representatives of the deceased collector and surveyor.

praying a payment over, and distribution of, the sum so recovered, according to the rights respectively claimed by them. A bill was also filed on the chancery side of the circuit court, by the representatives of the deceased collector and surveyor, against the present collector and surveyor, and the clerk of the court praying a moiety to be paid over to them, or such other portion as they were entitled to by law, and also for general relief. Upon the hearing of the cross petitions, the circuit court overruled the prayer of the motion of the district attorney; the court being of opinion that the United States were entitled only to a moiety of the money, and that the same ought to be paid to the collector of the district, and ordered the clerk of the court, accordingly, to pay the same to John Jones, the present collector, after deducting therefrom one half of one per centum for his commission. And the court being divided in opinion, whether the other moiety should be paid to the said collector to be distributed by him according to law, as this court should direct, or without any direction on the subject, certified the same question to the supreme court. Upon the hearing of the suit in chancery on the bill, answer, and proof, in which none of the facts were controverted, a question occurred before the court, whether the representative of the late surveyor, in right of his intestate, was entitled to receive the moiety of that portion of the penalty which is, by law, to be distributed among the several revenue officers of the district wherein the penalty was incurred; upon which

question the court was divided, and the same question was certified to this court.

*Swann,* for Jones et al. The whole body of embargo laws shows, that the collector is, *ex officio,* to receive penalties and forfeitures; and that he who is *to receive,* is to have his distributive share as his property of right, and to make the division among the other persons entitled. The term *collector* means the officer of the law, invested with legal immortality. Official obligations do not attach to the person of the individual, but to the office.[a] The penalty may be released by the treasury at any time before the collector receives it.

*Wirt,* for Shore's executor et al. The question is, whether, of these two officers, he who supports all the labour and inconvenience shall be entitled to the reward. The death of Mr. Shore did not discontinue his office; his deputy exercised the duties, as by law he was authorized to do, until the rendition of the judgment. The reason of the law is its soul; the intention of the legislature must be regarded; it must have been their motive to stimulate the zeal and exertions of the officers of the customs by an adequate incentive. Policy rendered it more essential in the embargo laws than in the ordinary revenue laws, and the reward was, therefore, attached to the incumbent who detected the offence, and prosecuted. The question is *stricti juris,* and must be de-

a 4 *Cranch,* 171. Streshly et al. v. The United States.

termined by the letter of the law. It does not re-
quire the collector to *live on* till the reward is reaped,
but the right descends to his representatives. If
there be a private information, the common informer
gets half the moiety of the officers. If there be no
informer, they are entitled upon the ground of like
merit. The title of the informer vests upon the in-
formation, and the collector takes his place. The
law provides that a person entitled to a share, who
shall desire to become a witness, must release; he
must renounce and lay down his title in order to
qualify himself as a witness. Where the forfeitures are
recovered in consequence of information by the offi-
cers of a revenue cutter, a share is given to them,
but no body pretends that their successors would
take. It is conceded that the title may be defeated
by a remission of the penalty; but that is a condi-
tion originally attached by law. The collector dies;
but he lives in his deputy, for whose conduct his
estate is responsible.

*Pinkney*, in reply. The argument drawn from an
equitable construction, according to relative merit,
is unsatisfactory. The law holds out a contingent
prospective reward; if the officer dies, it is gone, and
the policy of the law is sufficiently satisfied. But
the letter of the law is clear and peremptory; the
penalty is given to the officer where it was incurred,
and not to the seizing officer. At what epoch will
you stop, in fixing the character of the person enti-
tled? At the seizure? the prosecution? or the ren-
dition of the judgment? At neither: for the word

1816.

Jones .
v.
Shore's exe-
cutor.

" *recovered*" is the emphatic expression, and it is reco-
vered when adjudged and received.    Every other
construction is arbitrary and fictitious.    The presi-
dent's power of pardoning is a conclusive argument;
if the right vested, it could not be thereby devested.
The provision, as to officers wishing to become wit-
nesses, signifies nothing.   They have an interest;
not a vested and absolute interest, but contingent
upon the recovery; and if they think fit to sacrifice
it; they may be witnesses.    The collector did not
live in his deputy; the law merely casts the responsi-
bility upon his estate as to the acts of the deputy.

Story, J., delivered the opinion of the court, and,
after stating the facts, proceeded as follows :

As the United States have not asserted any claim,
the first question for the decision of the court is,
whether the present collector and surveyor, the ac-
tual incumbents in office, or the representatives of
the late collector and surveyor, in right of their tes-
tator and intestate, are entitled to the moiety of the
money received in satisfaction of the judgment above
stated, and now in the custody of the circuit court.

By the express provisions of law, all penalties and
forfeitures accruing under the embargo acts, with a
few exceptions, not applicable to this case, are to be
distributed and accounted for in the manner prescri-
bed by the collection law of the 2d of March,
1799, ch. 122.    To this latter act, therefore, the ar-
guments of counsel have been chiefly directed; and
upon the true construction of the 89th section of the
act, the decision of this cause must principally rest

The 89th section enjoins the collector, within whose district a seizure shall be made, or forfeiture incurred, to cause suits for the same to be commenced without delay, and prosecuted to effect; and authorizes him to receive from the court, within which a trial is had, or from the proper officer thereof, the sums so received, after deducting the proper charges, and on receipt thereof requires him to pay and distribute the same without delay, according to law, and to transmit, quarter-yearly to the treasury an account of all the moneys received by him for fines, penalties, and forfeitures, during such quarter. The 91st section declares that all fines, penalties, and forfeitures, recovered by virtue of the act, and not otherwise appropriated, shall, after deducting all proper costs and charges, be disposed as follows, viz., "one moiety shall be for the use of the United States, and be paid into the treasury thereof, by the collector receiving the same; the other moiety shall be divided between, and paid in equal proportions to, the collector and naval officer of the district, and surveyor of the port, wherein the same shall have been incurred, or to such of the said officers as there may be within the same district; and in districts where only one of the aforesaid officers shall have been established, the said moiety shall be given to such officer." Then follow provisions referring to the distribution in cases where the recovery has been had in pursuance of information given by any informer, or by any officer of a revenue cutter.

It is argued on behalf of the present collector and surveyor, that upon the true construction of these

1816.

Jones
v.
Shore's executor.

1816

Jones
v.
Shore's exe-
cutor.

clauses no title to a distributive share of penalties and forfeitures vests until the money has been actually received by the collector from the officer of the court; and that upon such receipt it vests in the proper officers of the customs who are then in office. And in support of this argument it is further asserted that until this epoch the claim is a mere expectancy and not a right; the interest being in abeyance, uncertain, and contingent. An attempt has been made to press the language of the act into the service of this argument. But it certainly will not support it: the language of the act, in its most obvious import, does not seem to have contemplated any charge in the officers of the customs between the time of the accruing and the receipt of the penalty or forfeiture. It seems principally to have been adapted to cases of the most ordinary occurrence, and it is only by an equitable construction that it can, in aid of the legislative intention, be brought to reach the present case. The act must receive the same construction in relation to forfeitures *in rem*, as in relation to personal penalties. Both are distributable in the same manner, and subject to the same rules. The case, therefore, will be first considered, in reference to forfeitures *in rem*.

Whenever a forfeiture *in rem* accrues, it is by the act made the duty of the collector to seize the thing, and to prosecute a suit therefor, to final judgment. The law contemplates that he may seize, upon probable cause of seizure, not simply in cases of personal knowledge, but upon the information of others. He seizes, however, at his peril, and if the act be not justifiable, he is subject to a personal responsibility

for all damages. He is placed, therefore, in a situation in which he is bound to act, and yet is not protected against the legal consequences of his acts. It is unquestionably with a view to stimulate his vigilance, and reward his exertions, that the law has given him a share of the forfeitures recovered by his enterprise and activity. And yet it would follow upon the argument which has been stated, that the collector who seizes might be liable to all the responsibility of the act, in case of a failure, without receiving any of the fruits of his toil, if crowned with success. This certainly would seem to be against the policy of the legislature, as well as against the plainest rules of equity. It is a maxim of natural justice, *qui sentit commodum sentire debet et onus ;* and the words of a statute ought to be very clear that should lead to a different determination. But the case is not left to the result of general reasoning upon the intent and policy of the legislature. It is not true, that the right of a seizing officer to a distributive share is a mere expectancy. By the common law a party entitled to a share of a thing forfeited, acquires by the seizure an inchoate right, which is consummated by a decree of condemnation, and when so consummated, it relates back to the time of the seizure. This principle is familiarly applied to many cases of forfeitures to the crown; and even in respect to private persons entitled to forfeitures, the interest which is acquired by seizure has been deemed a sufficient title to sustain an action of detinue for the property. And it is very clear that the legislature steadily kept in view this principle of the

common law; for the act has expressly provided that any officer entitled to a part of the forfeiture may be a witness at the trial; and, in such a case, he shall lose his share in the forfeiture. The law, therefore, deems him a party having a real substantial interest in the cause, and not a mere expectancy—"a fleeting hope that only keeps its promise to the ear, but breaks it to the sense." It is true, that the act in making distribution of forfeitures speaks of the parties entitled to them by the description of their office; but it cannot, with any colour of reason, be argued that this designation of office meant to exclude a *designatio personæ.* On the contrary, it is most manifest that the act meant to point out the *person* entitled by a description of his *office.* The question then recurs, who is the person meant under this description of office? Is it the person who happens to be in office when the forfeiture is received? Or the person who was in office when the seizure was made, and who thereby acquires an inchoate right, which the subsequent judgment ascertained and fixed? The words may be literally applied indifferently to either; but in point of law, they can be properly applied only to him who has, under the same description of office, already acquired a vested title, inchoate, or consummate, in the forfeiture. This construction is fortified by a recurrence to other provisions in the 91st section of the act. It is, in the first place, provided that, in all cases of forfeitures, recovered in pursuance of information given to *such* collector, (pointing to the collector entitled to a distributive share,) a moiety of the moiety shall be given to the

informer. The grammatical connexion of the words, as well as the obvious exposition of the clause, supposes that the collector who receives the information, and commences the suit, is the person entitled to the distributive share of the forfeiture. In the next place it is provided, that when the forfeitures are recovered, in consequence of any information given by any officer of the revenue cutter, one moiety thereof shall be distributed among the officers of such cutter. Can there be a doubt that the persons who were officers at the time of the information, and not those who were officers at the time of the receipt of the forfeitures, are the parties entitled to this moiety? Yet the same reasoning applies here, with equal force, as in the case of the collector. So by the embargo act of the 9th January, 1809, ch. 72. s. 12., forfeitures recovered, in consequence of any seizure made by the commander of any public armed vessel of the United States, are to be distributed according to the rules of the navy prize act of the 22d April, 1800, ch. 33.; and it is clear, beyond all doubt, that the parties so entitled are the officers and crew at the time of the seizure. The analogous rule, in cases of captures, *jure belli*, is here expressly alluded to, and adopted by the legislature, and that rule stands on the same general foundation with that of the common law. The right of captors to prizes is but an inchoate right, and, until a condemnation, no absolute title attaches. But when condemnation has passed upon the property, it relates back to the capture, and although the parties have died in the

intermediate time, the title vests *in proprio vigore* in their representatives.

Much stress has been laid upon the clauses in the 89th and 91st sections of the collection law of the 2d March, 1799, which authorize the collector to receive from the proper officer of the court the moneys recovered in suits for penalties and forfeitures, and which require him to pay and distribute the same, according to law, among the officers of the customs, and other parties entitled thereto. But these provisions are merely directory to the collector, and do not vest in him any personal right to the money received, which he did not before possess; much less do they authorize the supposition that, until the receipt, no title vested in any person. It might, with as much force and propriety, be urged, that, until the same epoch, no right to the other moiety vested in the United States; for the statute is equally mandatory and precise in this case as in the other. It would, however, be quite impossible to contend, upon any legal principles, that the title of the United States was not, to all intents and purposes, consummated by the judgment.

The same reasoning which has been used in respect to forfeitures *in rem*, applies to personal penalties; and it is unnecessary to repeat it. The court are clearly of opinion, that the right of the collector to forfeitures *in rem* attaches on seizure, and to personal penalties on suits brought, and in each case it is ascertained and consummated by the judgment; and it is wholly immaterial whether the collector die before or after the judgment. And they are further

of opinion, that the case of the surveyor is not, in this respect, distinguishable, in any manner, from that of the collector. They are, therefore, of opinion, that the representatives of the deceased collector and surveyor, and not the present incumbents in office, are entitled to the distributive shares of the moiety of the money now in the registry of the circuit court.

The next question is as to the proportions in which this moiety is to be divided between the representatives of the collector and surveyor. Whatever may have been the practice in the district of Petersburg, the words of the act admit of no reasonable doubt. The moiety is to be divided in *equal proportions* between the collector, naval officer, and surveyor, or between such of the said officers as there may be in the district. There was no naval officer in the district of Petersburg, and, consequently, the division must be, in equal proportions, between the collector and surveyor.

It is the unanimous opinion of this court, that it be certified to the circuit court, that it is the opinion of this court,

1st. In the case of the United States against Joseph Jones and others, that the moiety of the money now remaining in the custody of the circuit court, in the proceedings in the case of the United States, appellants, against Joseph Jones and others, mentioned, should be paid to the said Joseph Jones, collector of the district of Petersburg, to be, by him, divided in equal proportions between Thomas Shore, as he is executor of the last will and testament of

John Shore, deceased, and Reuben M. Gillian, as he is administrator of the goods and effects of Andrew Tarbone, deceased.

2d. In the case of Thomas Shore and another against Joseph Jones and others, that the representative of the late surveyor, in right of his intestate, was entitled to receive one moiety of that portion of the panalty in the proceedings mentioned, which is by law to be distributed among the several revenue officers of the district wherein the penalty was incurred.