31 U.S. 404 (____)
6 Pet. 404
LOUIS M'LANE, EXECUTOR OF ALLEN M'LANE, DECEASED, CLAIMANT OF A MOIETY OF THE FORFEITURE OF THE SHIP GOOD FRIENDS, APPELLANT
v.
THE UNITED STATES.
Supreme Court of United States.

*410 This case was argued by Mr Jones and Mr Sergeant for the appellant: and by Mr Taney, attorney-general of the United States, for the appellees.
Mr. Taney, attorney-general, contra.
*423 Mr. Justice STORY delivered the opinion of the Court.
This case comes before the court upon an application made by Allen M'Lane, collector of the district of Delaware, to the circuit court of that district, for a decree of distribution of the forfeiture accruing from the seizure and condemnation of the ship. Good Friends and cargo, one moiety whereof is claimed by the said collector, as seizing officer; there having been a remission of the forfeiture by the secretary of the treasury, under the *424 authority of the act of congress of the 29th of July 1813, ch. 33. Upon the conditions required by that act the only controversy existing in the cause is between the United States and the collector, in respect to his distributive share. The United States and the collector agreed upon a special statement of the facts; upon which it was further agreed that a decree, pro forma, should be entered by the circuit court against the collector, for the purpose of a final decision in the supreme court; and by an appeal from the pro forma decree so rendered, the cause now stands before this court.
Upon the argument at the bar, some objection was suggested, though not strenuously urged, against the jurisdiction of the circuit court to entertain the cause under the peculiar circumstances. But this objection appears to us not well founded. Where a sentence of condemnation has been finally pronounced in a case of seizure, the court, as an incident to the possession of the principal cause, has a right to proceed to decree a distribution of the proceeds, according to the terms prescribed by law. And it is a familiar practice to institute proceedings of this nature, wherever a doubt occurs as to the rights of the parties who are entitled to share in the distribution. There is nothing in the circumstances of the present case to displace this jurisdiction. And it now appears, that the proceeds of which the distribution is now claimed have been, by an express agreement between the United States and the collector, put in a situation to be forthcoming to meet the exigency of the decree which may be rendered upon the statement of facts.
The act of congress of the 29th of July 1813, enacts "that the owners of the ships called the Good Friends, the Amazon and the United States, and of the cargoes on board said vessels, which arrived in the month of April 1812, in the district of Delaware, from Amelia Island, with cargoes that were shipped on board said vessels in the united kingdom of Great Britain and Ireland, shall be entitled to, and may avail themselves of all the benefits, privileges and provisions of the act entitled "an act, directing the secretary of the treasury to remit fines, forfeitures and penalties in certain cases, passed on the 2d day of January last past, in like manner and on the same conditions as though said vessels had departed from the kingdom aforesaid between the 23d day of June and the 15th day *425 of September mentioned in said act, and had arrived within the United States after the first day of July last."
The act of the 2d of January 1813, chap. 149 [chap. 7], enacts that in all cases where goods, wares and merchandise, owned by a citizen or citizens of the United States, have been imported into the United States from the united kingdom of Great Britain and Ireland, which goods, &c. were shipped on board vessels which departed therefrom between the 23d day of June last and the 15th of September last, and the person or persons interested in such goods, &c. or concerned in the importation thereof, have thereby incurred any fine, penalty, or forfeiture under an act, &c. &c. (reciting the titles of the non-intercourse acts of 1st of March 1809, and of 1st of May 1810, and of 2d of March 1811), on such person or persons petitioning for relief to any judge or court proper to hear the same, in pursuance of the provision of the act entitled "an act to provide for mitigating or remitting the fines, penalties and forfeitures in certain cases therein mentioned," and on the facts being shown, on inquiry had by said judge or court, &c.; in all such cases, wherein it shall be proved to his satisfaction, that said goods, &c. at the time of their shipment were bona fide owned by a citizen or citizens of the United States, and shipped, and did depart from some port or place in the United Kingdom of Great Britain and Ireland, owned as aforesaid, between the 23d day of June last and the 15th day of September last, the secretary of the treasury is hereby directed to remit all fines, penalties and forfeitures that may have been incurred under the said act, in consequence of such shipment, importation or importations upon the costs and charges, which have arisen, or may arise, being paid, and on payment of the duties which would have been payable by law on such goods, &c., if legally imported, &c. &c."
The result of both of these acts taken together, as applicable to the case of the Good Friends, is, that the secretary of the treasury was directed to remit the forfeiture, upon the payment of costs and charges, and the duties upon the cargo, which would have been payable upon the same goods, if legally imported, after the 1st of July 1812, that is to say, upon payment of the double duties imposed by the act of the 1st of July 1812, ch. 112. Without question, these acts of congress were *426 directory and mandatory to the secretary; and in his remission, which forms a part of the case, he purports to act, and has in fact acted in obedience to their requirements.
It is wholly unnecessary to inquire whether the secretary would have had authority to remit the forfeiture in this case, under the remission act of the 3d of March 1797, ch. 67; because, in the first place, the terms, upon which the remission is to be granted by that act, essentially differ from those prescribed by these acts: and because, in the next place, the secretary purports to have acted in obedience to the latter.
The question then arises, in what light the reservation and payment of the double duties, as conditions upon which the remission is granted, are to be considered? Are the double duties to be deemed a mere payment of lawful duties; or are they to be deemed a part of the forfeiture reserved out of the proceeds of the cargo? If the latter be the true construction, then the collector is entitled to a moiety: if the former, he is barred of all claim.
The duty of the collector in superintending the collection of the revenue, and in making seizures for supposed violations of law, is onerous, and full of perplexity. If he seizes any goods, it is at his own peril; and he is condemnable in damages and costs, if it shall turn out, upon the final adjudication, that there was no probable cause for the seizure. As a just reward for his diligence, and a compensation for his risks; at once to stimulate his vigilance and secure his activity; the laws of the United States have awarded to him a large share of the proceeds of the forfeiture. But his right by the seizure is but inchoate: and although the forfeiture may have been justly incurred, yet the government has reserved to itself the right to release it either in whole or in part, until the proceeds have been actually received for distribution; and in that event, and to that extent, it displaces the right of the collector. Such was the decision of this court in the case of the United States v. Morris, 10 Wheat. Rep. 246. But whatever is reserved by the government out of the forfeiture, is reserved, as well for the seizing officer, as for itself; and is distributable accordingly. The government has no authority, under the existing laws, to release the collector's share as such; and yet to retain to itself the other part of the forfeiture.
*427 In the present case, it is perfectly clear that the seizure of the Good Friends and her cargo was justifiable, and that they were forfeited for a violation of the non-intercourse acts. This is established, not only by the final decree of condemnation, but by the very terms of the remission granted by the secretary of the treasury. In point of law, no duties, as such, can legally accrue upon the importation of prohibited goods, They are not entitled to entry at the custom house, or to be bonded.
They are, ipso facto, forfeited by the mere act of importation. The Good Friends, then, having arrived in April 1812, long before the double duties were laid, and her cargo being prohibited from importation; it is impossible, in a legal sense, to sustain, the argument, that the importation could be deemed innocent, and the government could be entitled to duties, as upon a lawful importation. It was entitled to the whole property, by way of forfeiture; and to nothing by way of duties. When, therefore, congress authorised the remission upon the payment of double duties, the latter was imposed as a condition of restitution upon the offending party. In the language of the act of the 2d of January 1813, the remission was to be "on payment of the duties, which would have been payable by law on such goods, &c., if legally imported;" not upon payment of the duties which had lawfully accrued upon the same goods. The act presupposes that no duties had accrued, or could accrue by operation of law upon the goods; and the act of the 29th of July 1813 expressly treats it as a condition. Indeed, it is impossible that double duties could have lawfully accrued upon the importation of the cargo of the Good Friends, in April 1812, when the double duties were not imposed until the passage of the act of the 1st of July of the same year.
If the government had reserved a gross sum, equivalent to the double duties, out of the forfeiture, as a condition of the remission, there could be no doubt that the collector would have been entitled to his moiety of the sum so reserved. Can it make any difference in point of law, that the reservation is made by a reference to double duties, as a mode of ascertaining that sum? It has not been pretended that the act of the 29th of July 1813 could divest the rights of the collector, antecedently vested in him by the existing laws. And if such a *428 doctrine could be maintained at all, it would still be necessary to establish that there was an unequivocal intention on the part of the government to remit his share, and to retain its own share of the forfeiture. Such an extraordinary exercise of power, if it could be even maintained, where it is subversive of existing rights, ought to be evidenced by terms susceptible of no doubt. We are of opinion that the present act neither justifies nor requires any such construction. The double duties are referred to as a mere mode of ascertaining the amount intended to be reserved out of the forfeiture; and not as a declaration of intention on the part of the government, that they were to be received as legal duties due upon a legal importation.
But a distinction has been taken at the argument on behalf of the United States, and an apportionment or division of the duties has been insisted on. It is said, that so much of the duties demanded as were equal to the single duties payable by law on imported goods in April 1812, ought to be considered as received in that character by the government; since this case has been treated by the government as an innocent importation. But as to the additional duties imposed by the act of 1st of July 1812, they may be considered as a reservation of forfeiture. And it is added, that the government has itself acted upon this distinction in this very case; for it has allowed the collector his moiety of the latter, and denied it in respect to the former.
The true answer to be given to this argument is, that the act itself contemplates no such apportionment or division of the duties. The duties are reserved as a whole, and not in moieties. And it could not well be otherwise; for, as has been already shown, no duties at all were legally payable on the goods. They were in fact, and were treated by the government as prohibited goods. And when the government imposed the double duties as a condition, they were imposed as a sum which would have accrued upon a legal importation after the 1st day of July 1812. The very circumstance, that the government itself has treated any part of the reservation as forfeiture, and as distributable accordingly, is conclusive to show that the whole is incapable of being treated as duties. The distinction contended for, then, not *429 being found in the act itself, and part of it being confessedly received in the character of a forfeiture; we think the whole must be treated as received as a reservation by way of forfeiture. Our opinion is grounded upon the fact, that the act refers to the double duties as a mere mode of ascertaining the amount; and that it is undistinguishable from the case of a reservation of a gross sum.
Upon the whole, the decree of the circuit court refusing the distribution is to be reversed, and the cause remanded to that court with directions to decree to the legal representatives of Allen M'Lane, the collector, one moiety of the double duties, deducting that portion which has been already received by him.
This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Delaware, and was argued by counsel; on consideration whereof, this Court is of opinion, that there is error in the decree of the circuit court, whereby it was ordered that the said Allen M'Lane take nothing by his motion for a decree of distribution of the forfeiture decreed by the circuit court in the proceedings in this cause, mentioned upon the statement of facts in the same proceedings mentioned; and for this error it is ordered, adjudged and decreed, that the decree of the said circuit court upon the motion aforesaid, be and hereby is reversed and annulled. And this court, proceeding to render such decree as the said circuit court ought to have passed, do hereby order, adjudge and decree upon the said motion, and statement of facts, that the said Allen M'Lane as collector, as herein mentioned, was in his lifetime entitled, and that his legal representative is now entitled to receive as his distributive share of the forfeiture aforesaid one full moiety of the whole sum which has been paid by Stephen Girard according to the act of congress, and the remission by the secretary of the treasury, as in the same statement of facts mentioned. And the said Allen M'Lane being now dead, it is further ordered, adjudged and decreed, that the same full moiety be paid over to his legal representative, now appearing and made a party to these proceedings in this Court, viz. Louis M'Lane, the *430 executor of the last will and testament of the said Allen M'Lane, deceased, as his distributive share accordingly; deducting, however, therefrom, the moiety of the said moiety, which has been decided by the treasury department to belong to the said Allen M'Lane; if the same has been received by the said Allen M'Lane, or by his legal representative.