## LOUIS LAPHAM *vs.* CHARLES ALMY.

The courts of this commonwealth have jurisdiction of an action by an informer against a collector of customs, to recover a share of a penalty or forfeiture recovered by the latter for smuggling. But such action cannot be maintained to recover a share of money paid to a collector before the rendition of any decree or judgment, and by way of compromise of pending legal proceedings for the smuggling; although such compromise was made with the approval of the United States attorney and the secretary of the treasury.

ACTION against the collector of customs of Fall River, containing a count in contract and one in tort, to recover an informer's share of certain money received by the defendant. Upon facts which are stated in the opinion, *Ames*, J. directed a verdict for the defendant, in the superior court, and the plaintiff alleged exceptions.

*E. L. Barney*, for the plaintiff.

*J. C. Blaisdell*, for the defendant.

GRAY, J.* The material facts which the plaintiff offered to prove at the trial in the superior court, and upon which the presiding judge ordered a verdict for the defendant, were as follows: Upon the arrival of the schooner Charles W. Bentley at Fall River from a foreign port, part of her cargo was landed at midnight under the orders and in the presence of her principal owner, without the payment of duties and in evasion of the revenue laws of the United States. The plaintiff informed the defendant thereof, who as collector of customs of the port of Fall River caused a libel to be filed by the attorney of the United States against the vessel for this violation of the revenue laws, and proceedings were had thereon in the district court of the United States for this district. By the advice of the attorney or his assistant, and with the approval of the secretary of the treasury of the United States, that suit was compromised and adjusted, upon the payment by the principal owner of the vessel to the defendant of the sum of $2600, and an entry of "libel discontinued" made upon the record of that court. It has been a common practice, advised and sanctioned by the district attorneys of the United States, to have libels or prosecutions for smuggling settled and disposed of on payment by the defendant, without having the case brought to judgment or a final decree of forfeiture entered. The plaintiff, as the report states, "did not claim that there was any express promise by the defendant to pay or account for any part of the money, so received by him, to the plaintiff, or that it was paid to him with any direction or express trust to account to the plaintiff for any portion of it;" but contended that the money was received by the defendant as a forfeiture or penalty for a violation of the revenue laws of the United States, and that by the statutes of the United States the plaintiff, as informer, was entitled to one quarter part of it.

The statute upon which the plaintiff relies is the act of congress of 1799, *c.* 22. By § 89 of this act, "all penalties, accruing by any breach of this act, shall be sued for and recovered,

---

* This case was argued at Boston in January 1867.

with costs of suit, in the name of the United States of America ; " " and the collector within whose district the seizure shall be made or forfeiture incurred is hereby enjoined to cause suits for the same to be commenced without delay, and prosecuted to effect," and is authorized to receive from the court or its officer, " the sum or sums so recovered, after deducting all propei charges to be allowed by the said court, and on receipt thereof the said collector shall pay and distribute the same without de - lay, according to law." And by § 91, " all fines, penalties and forfeitures, recovered by virtue of this act, and not otherwise appropriated, shall, after deducting all proper costs and charges, be disposed of as follows : " one moiety for the use of the United States, and another moiety to be divided between the collector and other revenue officers ; " provided nevertheless that in all cases where such penalties, fines and forfeitures shall be recovered in pursuance of information given to such collector by any person other than the naval officer or surveyor of the district, the one half of such moiety shall be given to such informer," and the other half to the officers of the revenue. 1 U. S. Sts. at Large, 695, 697.

The defendant contends that if this money was, within the meaning of the statute, " recovered in pursuance of information given " to the defendant by the plaintiff, the right of the plaintiff to a share thereof could be determined only by an application to the court of the United States, upon whose process the vessel was seized ; and that this court has no jurisdiction to inquire into the question. But if this money was " recovered " and received by the defendant, within the meaning of the act of congress, this objection cannot be sustained. The court in which a sentence of condemnation is passed in a cause of seizure doubtless has jurisdiction, as an incident to the possession of the principal cause, to order distribution of the proceeds according to the terms prescribed by law ; and it is a familiai practice in the courts of the United States to institute an inquiry for that purpose whenever a doubt is suggested as to the rights of the parties who are entitled to share in the distribution. *Jones* v. *Shore*, 1 Wheat. 462. *M'Lane* v. *United States*, 6 Pet. 104.

*Westcot* v. *Bradford*, 4 Wash. C. C. 492. *Hooper* v. *Casks of Brandy*, Daveis, 370. But such jurisdiction can be exercised only while the proceeds are in the custody of the same court, and does not exclude all other remedy of a party entitled to share in the proceeds, after they have passed out of its control. If any amount recovered by way of forfeiture has been paid over by order of the court to the collector, and received by him, he is liable to an action by any other party entitled for his share; and such an action may be maintained either in the circuit court of the United States, if the amount in dispute and the citizenship of the parties are such as to give that court jurisdiction, or in the courts of the state. *Van Ness* v. *Buel*, 4 Wheat. 74, *Buel* v. *Van Ness*, 8 Wheat. 312. When, as in this case, both parties are citizens of the same state, the courts of the United States have not been invested by congress with jurisdiction over such an action, and it can only be brought in the state courts.

It therefore becomes necessary for this court to determine whether the money received by the defendant, without any decree for its payment, was " recovered," within the meaning of the act of congress of 1799; and the sections already quoted clearly show that it was not. All their provisions look to a recovery by judgment of court, and not otherwise. By § 89 penalties are to " be sued for and recovered, with costs of suit, in the name of the United States;" the collector is directed to cause suits for forfeitures to be " prosecuted to effect," which ordinarily means to final judgment; the money which he is to receive and distribute is defined as " the sum or sums so recovered," that is, by suit in the name of the United States, prosecuted to final judgment; and all proper charges are to be first " allowed by said court" and deducted. And in § 91 the amount to be distributed is described as " fines, penalties and forfeitures recovered by virtue of this act," " after deducting all proper costs and charges." Whether any fine, penalty or forfeiture has been incurred can only be ascertained by the decree of the court in which the suit is brought. *Gelston* v. *Hoyt*, 3 Wheat. 313, 317, & *seq.* Fines, penalties or forfeitures cannot be imposed, or the amount of costs and charges fixed, except by judgment of court.

A sum of money paid by agreement, and not pursuant to any judgment, is not a fine, penalty or forfeiture, nor recovered in the manner pointed out in the act.

The counsel for the plaintiff referred to the act of congress of 1797, *c.* 13, (made perpetual by the act of 1800, *c.* 6; 2 U. S. Sts. at Large, 7,) by which, upon a petition to the judge of the district court for the mitigation or remission of any fine, penalty or forfeiture incurred under the revenue laws, and a statement of the facts of the case by the judge after notice to the persons claiming the same and to the district attorney, the secretary of the treasury may mitigate or remit such fine, forfeiture or penalty, or any part thereof, if in his opinion incurred without wilful negligence or intention of fraud, and "direct the prosecution, if any shall have been instituted for the recovery thereof, to cease and be discontinued, upon such terms or conditions as he may deem reasonable and just." 1 U. S. Sts. at Large, 506. But there is nothing in the words of this act to show that a sum of money can be held to be "recovered," within the meaning of the revenue laws, without a judicial decree in favor of the party suing for it. And the decisions of the courts of the United States upon the construction and effect of the act of 1797 seem to be conclusive upon the point that the money must be adjudged to the United States, and received by the marshal or other officer of the court, before it can be said to be recovered under the act of 1799. In *United States* v. *Morris*, 1 Paine, 209; *S. C.* 10 Wheat. 246; it was held that the secretary's power of remission did not cease upon a final decree of condemnation, so long as the money still remained in the custody of the court. "Nothing," said Mr. Justice Livingston in the circuit court, (adopting the definition of Mr. Pinkney in *Jones* v. *Shore*, 1 Wheat. 468,) "is recovered, within the meaning of this law, until it is adjudged and received." 1 Paine, 230, 238. Mr. Justice Thompson, in delivering the opinion of the supreme court, also recognized a final decree of condemnation and payment of the money to the collector for distribution as both necessary to make the rights of revenue officers and informers absolute; and added: "If any prosecution has been instituted,

tne secretary has authority to direct it to cease and be discontinued, upon such terms as he may deem reasonable and just. This enables him to do ample justice to the custom-house officers, not only by reimbursing all costs and expenses incurred, but rewarding them for their vigilance, and encouraging them in the active and diligent discharge of their duty in the execution of the revenue laws." " No vested rights of informers or custom-house officers are violated in either case. These rights are conditional, and subordinate to the power of remission, and to be provided for in the terms and conditions upon which the remission is granted." 10 Wheat. 290–292, 295. In *M'Lane* v. *United States*, 6 Pet. 404, it was indeed held that the officers of the customs were entitled to share in a sum of money paid in accordance with a reservation by the secretary of the treasury upon remitting a forfeiture, under a similar statute, after a final decree of condemnation; but in that case, there having been a judgment for the forfeiture, the money reserved and paid was " recovered," within the rule of the previous case.

The record of the suit in the district court of the United States, which is made part of the report in this case, does not show any notice or statement by the judge, or remission by the secretary, as provided for in the act of 1797. Nor is there any evidence of a compliance with the act of congress of 1863, *c.* 76, § 10, which authorizes the secretary to compromise any claim of the United States upon the report and recommendation of the attorney of the United States, showing in detail the condition of the claim and the terms upon which the same may be compromised. 12 U. S. Sts. at Large, 740. But it is immaterial in this case to inquire whether the approval by the secretary of the compromise and settlement on which the libel was discontinued was in accordance with the acts of congress, or assented to by the plaintiff in such a manner as to bind him. If, as was argued for the plaintiff, " it must be presumed that the judge, the attorney and the marshal of the United States, the collector of customs, and the secretary of the treasury, when they took the money, and dismissed the libel, proceeded according to law," nen no informer had the right to claim anything not reserved

to him in the terms and conditions of the remission or compromise.   If, on the other hand, the settlement and discontinuance of the suit in the district court of the United States were unauthorized by law, and not assented to by the plaintiff, his remedy, if any, was by application or suit in that court, treating the settlement as invalid.   *United States* v. *Lancaster,* 4 Wash. C. C. 64.   *M'Lane* v. *United States,* 6 Pet. 404.   *The Palo Alto,* Daveis, 348.   *Raynham* v. *Rounseville,* 9 Pick. 44. *Wheeler* v. *Goulding,* 13 Gray, 539.   But whether the libel has or has not been legally and effectually discontinued, it has not been prosecuted to judgment, and nothing has been recovered, within the meaning of the acts of congress upon which alone the plaintiff relies to maintain his action.

This view being decisive of the case, it is unnecessary to determine whether the facts detailed in the report show such a giving of information by the plaintiff to the defendant as is contemplated by the act of 1799.

*Judgment on the verdict for the defendant.*