Casey, C. J.,
delivered the opinion of the court :
This case comes before us on a demurrer, which admits the facts as stated in the petition of the claimants, but alleges they are not sufficient in law to maintain their action. We need not, therefore, recite them.
The solicitor contends, in support of the demurrer, that the compromise of the suit by the Commissioner of Internal Revenue, under the direction of the Secretary of the Treasury, as set forth in the claimants’ petition, is binding upon them, and conclusive of their rights in the premises. That the act of 30th of June, 1864, § 44, which conferred upon the Secretary and Commissioner the right to compromise all suits relating to internal revenue, is broad enough in its provisions and scope to embrace this case. That until the actual receipt of the money, and while proceedings remain in fieri, the Secretary and Commissioner may interpose their authority and defeat the forfeiture by remitting the penalty or compromising the suit.
The claimants’ counsel contend that when the property was seized for violation of the excise law it was no longer liable for tax as such, but subject to forfeiture only; and, therefore, whatever sum was obtained by the remission of the forfeiture, or compromise of the suit, could only be so much reserved over out of the forfeiture as a penalty, and not as a tax.
If these sums were really penalties or forfeitures, and not taxes, it is admitted the claimants are entitled to share equally in their amount with the government. The internal revenue law gives one moiety of these to the informer. If, on the other hand, the amount in dispute was received by the government as taxes due from the party whose property was seized, and the officers had a right to so compromise the suit, then the claimants have no right to participate in the amount representing such taxes or duties.
The claimants rely on the ruling of the Supreme Court of the *111 United States in tbe case of McLane v. The United States, 6 Pet, 404, as decisive of this controversy. That case arose out of the seizure of a cargo of goods imported into the United States in violation of the non-intercourse laws, about the month of April, 1812. They were libelled, and a decree of condemnation passed. Congress then, on the 29th of July, 1813, authorized the Secretary of the Treasury to remit the forfeiture on payment of the duties which would have been payable by law on such goods, &c., if legally imported after the 1st of July, 1812. An act of Congress of that date had rendered such goods liable to a double duty. The Secretary of the Treasury, proceeding under this special act, remitted the forfeiture upon the conditions prescribed therein. The money was paid into court, where the forfeiture had been declared, and the collector, Mr. McLane, claimed a moiety, and prayed that it might be decreed to him. His prayer was refused, and he appealed to the Supreme Court of the United States.
Mr. Justice Story, after reciting the leading facts of the case, states
the questions presented in the following concise and lucid manner:
“ The question then arises, in what light the reservation and payment of the double duties, as conditions upon which the remission is granted, are to be considered % Are the double duties to be deemed mere payment of lawful duties or are they to be deemed a part of the forfeiture reserved out of the proceeds of the cargo 1 If the latter be the true construction, then the collector is entitled to a moiety; if the former, he is barred of all claim.”
The claim of the collector was sustained on the ground that the goods when imported and seized were not liable to duties at all, they were simply subject to forfeiture. And the object of the act of 1813, authorizing the Secretary to remit on payment of double duties, was a mere means of determining the extent to which the forfeiture should be enforced. The goods not having been subject to any impost or tax, it could not be retained as a duty, but must be regarded as a forfeiture. The government in that case admitted the right of the collector to participate in one-half the sum received, regarding the single duty as a tax and the residue as forfeiture. But the court held the entire proceeds to be a forfeiture, and decided that the collector was entitled to a moiety of the whole sum.
. Now the claimants maintain that after this property was seized and libelled it was no longer subject to tax ; that the only way in which the government could get any sum out of it in lieu of the taxes, the payment of which had been evaded by the manufacturer, was by a de *112 cree of condemnation and sale, or by reserving so much out of it, on releasing the property or compromising the suit, by way of forfeiture; that from the time of seizure till the close of the case the interests of the government and the informer are identical and mutual, and they are entitled to share alike in all that may be obtained out of the property seized, whether by compulsion or compromise. They admit the power of the Secretary to remit the forfeiture, but say it must be an entire remission. He may not remit the part to which the informer is entitled, and retain the government’s share or any part of it.
The right of an informer in the property seized is an inchoate right, and which, under our system of revenue laws, is liable at any time before the receipt of the money to be defeated by the intervention of the discretionary powers vested by law in the officers of the Treasury Department.
In tlie case of The United States v. Morris, 10 Wheaton, there had been judgment on the forfeiture, a decree of condemnation, and also judgment on the bond given by the claimant for the release of the property, a part of the money paid and distributed, a fieri facias levied on the goods of the defendants for the residue, and a venditioni exponas in the hands of the marshal to sell the same. At this juncture an application was made to the Secretary of the Treasury, who remitted the forfeiture, and his right and power to do so were the questions discussed and decided by the court.
Mr. Justice Thompson, in delivering the unauimotts judgment of the court, says :
“ It is not denied that custom-house officers have an inchoate interest upon the seizure, and it is admitted that this may be defeated at any time before condemnation. But if this is not the limitation put upon the authority to remit by the act giving the power, it is difficult to discover any solid ground upon which such limitation can be assumed. If the interest of the custom-house officers before condemnation is conditional and subject to the power of remission, the judgment of condemnation can have no other effect than to fix and determine that interest as against the claimant. Those officers, although they may be considered parties in interest, are not parties on the record; and it cannot with propriety be said that they have vested rights in the sense in which the law considers such rights. Their interest still continues conditional, and the condemnation only ascertains and determines the fact on which the right is consummated should no remission take place.” And on page 291, speaking of the statute which gives the Secretary of the Treasury, the power of remission in cases of for *113 feiture, lie says: “ Blit the plain and obvious interpretation is, that thé right does not become fixed until the receipt of the money by the collector.”
The object of the law is doubtless to secure the payment of the tax and not to produce forfeitures. The wide discretion vested in the officers is intended to assist them in collecting the duties and taxes, and to compel parties to deal justly by the government. The 48th section of the act of June 30, 1864, 13 Stat., 240, enacts “ That all goods, wares, merchandise, articles, or objects on which duties are imposed by the provisions of law, which shall be found in the possession or custody, or within the control, of any person or persons for the purpose of being sold or removed by such person or persons in fraud of the internal revenue laws, or with desigfi to avoid the payment of duties, may be seized by any collector or deputy collector who shall have reason to believe that the same are possessed, had, or held for the purpose or design aforesaid, and the same shall be forfeited to the United States.” The 41st sec., 13 Stat, 239, provides, “ and where not otherwise or differently provided for, one moiety thereof shall be to the United States and the other moiety thereof to the use of the person, to he ascertained by the judgment of the court, who shall first inform of the cause, matter or thing whereby any such fine, penalty, or forfeiture was incurred.” The 179th sec., 305, makes it the duty of the several collectors of internal revenue, within their respective districts, to prosecute for the recovery of fines, penalties, and forfeitures imposed by the act, and that all such sums may be sued for and recovered in the name of the United States in any appropriate form of action before any circuit or district court of the United States for the district within which the fine, penalty, or forfeiture may have been incurred, or any other court of competent jurisdiction. And where not otherwise provided for, “ one moiety shall be to the use of the person who, if a collector or deputy collector, shall first inform of the cause, matter, or thing whereby any such fine, penalty, or forfeiture shall have been incurred, and the other moiety to the use of the United States.”
The 44th section of the act, 13 Stat., 239 and 240, enacts, “ that the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, shall be, and is" hereby, authorized, on appeal to him made, to remit, refund, and pay back all duties erroneously or illegally assessed or collected, and all duties that shall appear to be unjustly assessed, or excessive in amount, or in any manner wrongfully collected, and also repay to collectors or deputy coh *114 lectors the full amount of such sums of money as shall or may he recovered against' them, or any of them, in any court, for any internal duties or licenses collected by them, with the costs and expenses of suit, and all damages and costs recovered against assessors, assistant assessors, collectors, deputy collectors, and inspectors in any suit which shall be brought against them, or any of them, by reason of anything that shall or may be done in the due performance of their official duties ; and also compromise such suits and all others relating to internal revenue.”
The 1st section of the act of 3d March, 1797, 1 Stat., 506, it is admitted, confers full power upon the Secretary of the Treasury to remit any forfeiture incurred in cases like the present. But the act requires that the application for the remission shall be Inade to the judge of the district where the forfeiture accrued, who, upon notice to the district attorney, and the person claiming the forfeiture, &c., hears the application in a summary manner, and reports the facts to the Secretary of the Treasury ; the latter, if satisfied that the penalty or forfeiture was incurred without any wilful negligence or intention of fraud, may mitigate or remit it, or any part of it. This act can have no bearing on the present case, because the mode prescribed was not pursued, and without that he could not proceed under it.
The case depends, therefore, entirely and squarely upon the construction to be given to the provision in the 44th section of the act of 30th of June, 1864, authorizing the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, to compromise all suits relating to internal revenue.
The statutory interest of an informer or prosecutor in a penalty or forfeiture under the revenue laws is only an inchoate and a contingent interest, and never vested and indefeasible until the money is actually received by him. This is the understanding and tacit agreement under which he enters upon the prosecution of the case. His individual interest must yield to the general policy and convenience of the government; the only limitation upon this is, that he shall be admitted to share, equally with the government, in the penalty or forfeiture recovered or reserved, in the final disposition of the case. Such are the results of the cases settled by the highest judicial authority, the Supreme Court of the United States. This, then, narrows the question in our case down to the simple inquiry whether the sum of one hundred and ninety-five thousand one hundred and two dollars, purporting to have been received on this compromise in payment of taxes due on the liquor manufactured, was really received as a tax or as a forfeiture. *115 And this again depends upon the right and power of the officers under that 44th section. They intended to receive it as a tax, and if they had a right to do so, if they might lawfully claim the payment of the tax out of the property seized, or from the manufacturer or party claiming the property, then it is clear it was a tax and not a forfeiture.
We think that Congress, in conferring this authority to compromise all suits, intended that the officers charged with the supervision of the assessm ;nt and collection of the internal revenue, and the enforcement of the law imposing it, should possess the fullest power and widest discretion. Instead, therefore, of the act enumerating and specifying the particular things which they might do, and to which their authority in that event would necessarily have been limited, they confer a power and right of control as broad and as extensive as the subject itself. It was of course apparent to Congress that in the workings of such complicated and vast machinery as that necessary for the assessment and collection of the internal duties imposed by the act of 1864, no human sagacity or foresight could provide beforehand for the adjustment of the innumerable difficulties that would arise in any other way than in the most general terms. And while they were imposing on the Secretary of the Treasury and the Commissioner of Internal Revenue a most onerous duty, they intended to confer all the power necessary to perform it efficiently. It was apparent that much litigation would necessarily arise; that multitudes of suits, embracing every variety of judicial controversy, must ensue. That the subject-matter and complexion of this litigation would be as diversified in its aspects and character, in its facts and principles, as the endless variety and almost infinite number of objects and human transactions upon which the law was made to operate. To specify, to enumerate powers and functions applicable to such a subject, was simply impossible. The only thing that could be done to meet such exigencies as must arise was to confer the power in the broadest and most general terms. This, we apprehend, was the intention when Congress conferred the power to compromise all suits relating to internal revenue.
Compromise is defined to be “ an agreement between two or more persons, who, to avoid a lawsuit, amicably settle their differences on such terms as they can agree upon.” — (1 Bouv. L. Diet., 109.) Lexicographers define it in the same way. Webster says compromise is "an amicable agreement between parties in controversy to settle their differences by mutual concessions.” To compromise ; “ To *116 adjust and settle a difference by mutual agreement, with concessions of claims by tbe parties — to agree, to accord.”
The suit compromised related to internal revenue. It grew directly out of, and was founded upon, the internal revenue law, and was a part of the machinery devised to enforce compliance with its provisions, as well as to punish for disobedience of its mandates. We have no doubt the power conferred embraced the right to compromise the suit in question, and being a matter of discretion vested by law in public officers, it is not re-examinable here. For a corrupt exercise of the power vested in them the officers would be liable to removal or impeachment. But no review of their action or appeal from their decision is given to any other tribunal. Therefore, whether it was a wise and judicious settlement, whether in accordance with sound policy, and for the best interests of the service, are questions which do not arise in the case. They, having made the compromise, and received a large sum in payment of the taxes admitted to be due, are the informers entitled to a share of those taxes 1 Does the seizure of the property and the pending suit for the forfeiture constitute such a partnership that the government must divide with them this sum paid to it expressly as taxes 1 The law confers upon them one-half of the forfeiture — no part of the taxes — yet if a party comes voluntarily forward after seizure and pays the taxes, the government could surely receive them ; suppose that occurs — they are paid over into the treasury of the United States. The suit for the forfeiture is till pending. The subsequent payment of the taxes does not condone the offence and operate as a release of the property; but the officers, at some subsequent period, agree to compromise with the owner upon the payment of a certain penalty, in lieu of the forfeiture, and restore to him the property. Does the act of compromise relate back to the receipt of the taxes, and make that a reservation out of the forfeiture which was in fact and in law, when made, a payment of taxes, and so regarded by the owner and the officers of the law 1 In such case the officers could receive the taxes — they were due as such, and if offered to be paid they could not be justified in refusing to receive them. But the receipt of those taxes does not take away or abridge their right to compromise the pending suit. That remains intact. And so far as that suit is concerned, their power over it is plenary and complete. They may reserve one dollar, or one hundred thousand, as a forfeiture or pefialty. But whatever they reserve as such they must divide it with the informer. But that which is voluntarily paid to them as *117 taxes goes into the public treasury, and the informer has neither lot nor part in the amount.
Between this case and McLane v. The United States, 6 Peters, 404, there is a marked and wide, distinction. In that case the goods never were liable to any tax or duty. They were subject to forfeiture, and to that alone. The United States' could receive nothing from the owner or out of the property as a tax, for neither the one nor the other owed any such. They had been brought into the country in violation of an act of Congress forbidding it, and rendering them liable to seizure and forfeiture; nothing else. His honor Mr. Justice Story states this as one of the grounds upon which the case rested :
“ In point of law, no duties, as such, can legally accrue upon the importation of prohibited goods. They are not entitled to entry at the custom-house, or to be bonded. They are ipso facto forfeited by the mere act of importation. The ‘ Good Friend,’ then, having arrived in April, 1812, long before the double duties were laid, and her cargo being prohibited from importation, it is impossible, in a legal sense, to sustain the argument that the importation could be deemed innocent, and the government entitled to duties as upon a lawful importation. It was entitled to the whole property by way of forfeiture, and to nothing by way of duties.”
Thus it will be seen that this whole case proceeds upon the ground that these goods never had been liable to any tax or duty; not, as contended for by the claimants in this ease, that by the seizure they only became amenable to forfeiture ; and that fact took away the right of the government to insist upon the payment of the tax. If that cargo had been liable to duties, and their amount had been paid to the Secretary of the Treasury, as a condition without which he would not entertain the application, I do not doubt the decision would have been different, and his right to do so sustained; nor would the collector have been entitled to participate in their amount. The seizure of this property at the instance of the claimants did not release the owner from the payment of the duties. It did not absolve him from liability to punishment for his attempted fraud upon the revenue and evasion of the taxes. They remained a lien, by the express provisions of the 55th section of the act of 1864, upon the distillery, the lot of land upon which it was situated, and all its appurtenances. These were subject to distraint and sale. They were seized and held by the government at the time of this compromise. The property thus held exceeded in value the amount of taxes received in that compromise, provided we include in our estimate the seventy-five thousand gallons of whiskey *118 which the United States had, manufactured out of the material on hand.
It would appear to me as a most lame and impotent conclusion, that with this vast power of remitting forfeitures under the act of 1797, and the still larger authority of compromise conferred by the act of 1864, Congress should have denied to the officers of the revenue the power of compelling the owner or party claiming the property to do simple justice to the United States by exacting as a condition precedent the payment of the taxes' due.
Take a case under the act of 1797. The goods seized were legally subject to a duty of 40 per cent. Upon a proper case presented, the Secretary is of opinion that the forfeiture was incurred without any wilful negligence, or any intention to defraud. But the goods were liable to a duty of forty per cent, of their value. So much is fairly and legitimately due to the United States. No punishment ought to be inflicted on the owner, because the mistake was neither wilful nor fraudulent; yet the government ought to be paid the duties legally and fairly due. According to the theory of the claimants, if the officer receives the taxes, the, informer is entitled to half of them; and the only way, therefore, they can get what is due the government is to make the owner pay eighty per cent. Either he is to be punished for an offence of ■ which he is not guilty, or the government must lose one-half of what is admitted to be its just dues, for the benefit of the informer. But the law expressly says the Secretary may cause the prosecution for the recovery of the forfeiture “ to cease and be discontinued upon such terms and conditions as he may deem reasonable and just.” A payment of a tax or duty due from the applicant upon the very goods would be a most reasonable and just condition. And if he can do so under this act, he can under the 44th section of the act of 1864; for the very power to make compromises must, ex vi termini, imply the right to fix, arrange, and agree to the terms and conditions of the settlement or adjustment of the suit. Looking, then, to the whole purpose and scope of these enactments, and regarding them as a part of a great revenue scheme, which can only be made effectual by vesting the largest power and broadest discretion in the principal officers intrusted with the administration and execution of the system, we think the power claimed and exercised in this case in making the compromise was fairly within the meaning and purview of the law ; that the Commissioner and Secretary had a right to compromise this as a suit relating to internal revenue; that in agreeing to such compromise-they had the right, and it was their duty, to require as a condi *119 tion of it that the taxes due the government on the property seized should be paid; that such sum was paid and received as taxes, and not as a sum reserved out of the forfeiture. And being taxes pure and simple, the claimants have no right to any part or portion of them ; hut that their right is limited to one-half the penalties or forfeiture reserved by the compromise as such. As upon the face of the petition the claimants have shown no cause of action, the demurrer is sustained and the petition is dismissed.